[Civ. No. 19760.   First Dist., Div. One.   Mar. 8, 1962.]

LEONARD J. BALL et al., Plaintiffs and Appellants, v. CALIFORNIA STATE AUTOMOBILE ASSOCIA-TION INTER-INSURANCE BUREAU, Defendant and Respondent.

Edward A. Friend for Plaintiffs and Appellants.

Sandford, Barry, Staiger & Seaver and Warren A. Staiger for Defendant and Respondent.

TOBRINER, J.— We must determine here whether or not respondent insurance company incurred liability for coverage for bodily injuries inflicted upon appellants by the operator of an uninsured motor vehicle. Effective as of September 18, 1959, the relevant statute required that no policy be *issued* or *delivered* without such coverage. The instant policy, which was issued and delivered on December 19, 1958,

provided that any of its terms in conflict with statute be amended to conform to such legislation. We have concluded that, since the policy had been issued and delivered prior to the enactment of the statute, the policy did not ''conflict'' with the legislation at the date of the policy's issuance and delivery, and respondent did not become liable for the loss.

The resolution of this case obviously must turn upon the involved insurance policy and the subsequent legislation. We first analyze their terms.

Respondent issued and delivered an automobile liability policy to appellant Ball on December 19, 1958. While the policy covered bodily injury liability and property damage protection it did not contain uninsured motorists coverage. The policy covered a one year term: from December 19, 1958, to December 19, 1959. The crucial clause of the policy upon which the case hinges, entitled ''Condition 25,'' reads as follows: ''TERMS OF POLICY CONFORMED TO STATUTE: Terms of this policy which are in conflict with the statutes of the State of California are hereby amended to conform to such statutes.''

Subsequent to the issuance and delivery of the policy the Legislature of the State of California enacted section 11580.2 of the Insurance Code to provide that ''No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be *issued or delivered* in this State . . . unless the policy contains, or has had added to it by endorsement, a provision insuring the named insured . . . for all sums which he shall be legally entitled to recover as damages for bodily injury from the owner or operator of an uninsured motor vehicle. . . .''' (Stats. 1959, ch. 817, § 1, p. 2835; emphasis added.) The enactment became effective on September 18, 1959, approximately nine months after the issuance of the policy.

The parties have stipulated that on September 27, 1959, appellants, while seated in appellant Ball's insured automobile, sustained personal injuries when an automobile driven by an uninsured motorist struck Ball's car. Appellants have brought this action for declaratory relief to construe the effect of Condition 25 in the policy, contending that it incorporated into the policy the statutory provision requiring coverage for bodily injuries inflicted by the owner or operator of an uninsured motor vehicle.

The trial court found that Condition 25 was placed in the

policy to provide "for compliance with legal requirements between the actual revisions of the form of insurance policy contract used by . . . [respondent] . . . in the usual course of business" and "eliminates the necessity of junking forms already printed because of some later change in law." The trial court also found that "The policy of insurance in question did not conflict with Insurance Code Section 11580.2 on September 18, 1959, in that the policy was in existence for several months prior to that date and was not issued or delivered subsequent to September 18, 1959, and, therefore, the provisions of Condition 25 did not come into effect." Accordingly, the court rendered judgment for respondent.

The issue of the case turns upon the simple question as to whether the contract of insurance conflicted with section 11580.2 of the Insurance Code; if there were such conflict, the contract would pick up and incorporate the legislative provision. The legislative provision, however, reads that no liability policy shall be *issued* or *delivered* unless it provides uninsured motorists protection. The terms "issued" and "delivered" must refer to the original issuance and delivery of the policy; they are fixed as to time and do not stretch into infinity.

In *Anderson* v. *Mutual Life Ins. Co.* (1913) 164 Cal. 712 [130 P. 726, Ann.Cas. 1914B 903], Justice Sloss in passing upon a policy of insurance which "bore date the twenty-second day of May, 1908" (p. 713), held that as between the date of signing the insurance policy and the act of delivery of the policy, the date of " 'issuance' " was "[t]he day upon which, by the agreement of the parties, the risk attached" (p. 716), that is, the date which the policy bore. In similar vein, the court in *Bloom* v. *Pacific Mut. Life. Ins. Co.* (1927) 85 Cal.App. 419 [259 P. 496], held that the "Delivery is complete[d] . . . when the policy is sent to the local agent to be unconditionally delivered. . . ." (P. 429.) (See *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1961) 190 Cal.App.2d 392, 398 [12 Cal.Rptr. 71].) The issuance or delivery of the policy either in the normal import of the words or the characterization of the courts occurs at a specific time.

While, as appellants contend, we must construe "any ambiguity in the contract . . . against . . . [respondent]," while we recognize that insurance contracts are "contracts of adhesion" (*Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781]), and while we are sensitive to

the plight of the assured who is confronted by multiple and complex clauses of insurance (*Fireman's Fund Indemnity Co.* v. *Prudential Assurance Co.* (1961) 192 Cal.App.2d 492 [13 Cal.Rptr. 629]), nevertheless we are bound by the language of a contract of insurance which is itself clear and unchallengeable. The instant policy incorporated only those legislative provisions with which it conflicted. Here the legislation refers to policies which "shall be issued or delivered. . . ." The specific act of issuance and delivery predated the legislative provision and cannot conceivably operate to bring within its meaning later legislation which was enacted after such issuance and delivery. The later legislation embraced only policies thereafter issued or delivered; it did not purport to affect existing contracts, and, indeed, according to appellants, "could not, *of its own force,* affect" appellant Ball's existing policy, "under the Federal and California Constitutions."

Appellants urge three arguments against this interpretation of the policy: they contend that Condition 25 must be read to cover "conflicts" between policy and statute as of every day of the life of the policy and that such analysis establishes liability for the instant loss; they urge that Condition 25 must do more than state existing law and must incorporate the "newly enacted 'uninsured motorists' statute"; they argue that Condition 25 is at the least ambiguous, and that the ambiguity must be resolved against the insurer. As we shall point out, we find no merit in these arguments.

Appellants' first argument runs that the insurance policy, whether or not it so provides, must conform with current statutory requirements (*Johnson* v. *Holmes Tuttle Lincoln-Mercury, Inc.* (1958) 160 Cal.App.2d 290, 298 [325 P.2d 193]); that the provision cannot be utterly useless. While Condition 25 could have been limited as to the *time* it was to be effective, and could, indeed, have been confined to the effective date of the policy, appellants argue that it was not; instead, it "speaks as of every day within the policy period that an accident happens. . . ." It amends the policy to conform to the statute because, on that date the terms of "this policy were in conflict with the statutes of the State. . . ."

Assuming that the policy "speaks" as of every day of its effective life, we must still determine whether, upon those days, the policy *conflicts* with the provisions of the statute. The statute provides that no policy shall be *issued or delivered*

without the inculpating provision for liability. The policy had *been issued* and *delivered* long previously to the statutory enactment; the date for the clash of contract clause and statute had accordingly passed. Thus even if the policy spoke as of every day of its term, the statute spoke only for the day of the policy's issuance and delivery. On that day no battleline was drawn between policy and statute because there was no such statute and, of course, no "conflict." On the other hand, to say that the words "issued and delivered" refer to a future "issuance" and "delivery" of the policy upon every subsequent day of its life is to torture the meaning of simple and direct language.

As we have noted, appellants secondly complain that Condition 25 is useless unless we inject some meaning or effectiveness into it; appellants say it must mean more than that the policy conforms to statute, a requirement of law in any event. The trial court found that the purpose of the condition was to avoid the necessity of discarding printed policies whose terms did not conform to legislative changes effected after such printing. In any case, the inclusion of a "useless" provision is no warrant for varying the meaning of effective language. As we have said, the statutory requirement related to the date of the issuance of the policy and the "conflict" described in Condition 25 would have had to occur at that time. But the statute had not then been enacted. How can we read Condition 25 to embrace a "conflict" that never took place? Tautology of clause is no license for distortion of language.

Appellants' third argument rests upon the claim that the provision is ambiguous and that all ambiguities must be resolved in favor of the assured. Yet Condition 25 is quite clear upon its face; we cannot import another meaning into it *in order* to make it ambiguous. Within the area of the language, an ambiguity can occur, but appellants here would rely upon foreign matter, as to the "intent" of the parties, not related to the language itself. (*Pendleton* v. *Ferguson* (1940) 15 Cal.2d 319, 323 [101 P.2d 81, 688].) We cannot import foreign substance to create ambiguity in language inherently clear.

We affirm the judgment.

Bray, P. J., and Sullivan, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 2, 1962.