Gary **LANGLEY** and Marilyn Langley and Cynthia Langley, Pamela Langley and Paula Langley, minors, by their father and next friend, Gary Langley

v.

The **HOME INDEMNITY COMPANY.**

Supreme Judicial Court of Maine.

Jan. 21, 1971.

Peter S. Kelley, Caribou, for plaintiffs.

Clyde L. Wheeler, Waterville, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

WERNICK, Justice.

*On appeal.* Plaintiffs attack as error the judgment of the Court below denying relief requested by plaintiffs in their complaint seeking a declaratory judgment

"that * * * the liability insurance policy * * * of Plaintiff Gary Langley with the Defendant insurance company [issued and effective August 4, 1967 to and including August 4, 1968] be determined as providing Plaintiff Gary Langley with * * * uninsured motorist coverage * * * available to Plaintiffs, * * * by virtue of * * * statutory enactment [effective January 1, 1968]."

The facts of the case were developed before the Court below by admissions in the answer of defendant supplemented by stipulations.

On August 4, 1967, plaintiff, Gary Lee Langley, of Caribou, Maine, was issued by the defendant, an insurance company licensed to do business in the State of Maine, an insurance policy insuring against liability resulting from or incident to the ownership, maintenance or use of an automobile of which Mr. Langley was the registered owner. On December 26, 1967 an updated Declaration as to new motor vehicle coverage was added to the policy.

At its regular session in 1967 the Maine Legislature enacted P.L. of Me.1967, Chapter 93, amending 24 M.R.S.A. § 502 by adding a new subsection numbered 22 and reading:

"22. Uninsured motorist. Any policy insuring against liability resulting from or incident to the ownership, maintenance or use of a registered motor vehicle shall contain a provision for protection against uninsured motorists for bodily injury, within limits commensurate with the Financial Responsibility Law."

By express provision the effective date of the statute was postponed beyond the usual ninety days following adjournment of the

Legislature (October 7, 1967) until January 1, 1968.

On June 3, 1968, the registered automobile of the plaintiff, Gary Lee Langley, was being operated by him in Caribou, Maine and there collided with another motor vehicle owned and operated by one, Benoit J. C. Bouchard, of Baker Brook, Province of New Brunswick, Canada. In the Langley automobile at the time of the collision were the other plaintiffs, Marilyn Langley, wife of Gary, and their three minor children, Cynthia, Pamela and Paula. All five of the Langleys suffered bodily injuries as a result of the collision caused by the negligent acts and omissions of Mr. Bouchard in operating his motor vehicle. The plaintiff, Gary Lee Langley, was at all times in the exercise of due care in the operation of his motor vehicle. The Langley liability policy was in full force and effect. The motor vehicle operated by Bouchard was without liability insurance coverage, and Bouchard himself lacked liability insurance coverage which could be applicable under the circumstances of the collision.

Had the plaintiff, Gary Langley, at any time requested so-called "uninsured motorist" protection from the defendant company, or had the defendant elected to provide said coverage on or after January 1, 1968 regardless of whether Gary Langley had requested it, the defendant company, for a premium charge of $4.00, would have written a coverage in Langley's policy reading as follows:

"Coverage G—Uninsured Motorists (Damages for Bodily Injury). To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages, from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so, the amount thereof, shall be made by agreement between the insured or such representative and the Company or, if they fail to agree, by arbitration.

"No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the Company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the Company."

On the date of the collision June 3, 1968, there was missing from the Langley automobile liability insurance policy any coverage which might be regarded as "uninsured motorist coverage" within the meaning of P.L. of Me.1967, Chapter 93. The entire dispute between plaintiffs and defendant arises from this omission and its effect, in the light of the statute, upon the rights and obligations of the parties in relation to the collision of June 3, 1968.

■ Resort to Declaratory Judgment procedures for decision of the issues raised is proper.

The plaintiffs are persons "whose rights are affected by a contract" and who seek to "have determined * * * question[s] of construction * * * arising under the * * * contract * * * and obtain a declaration of rights * * * thereunder." 14 M.R.S.A. Sec. 5954. The facts disclose that had the above described "uninsured motorist" coverage been written into the Langley automobile insurance policy as it was in force and effect on June 3, 1968, defendant would be legally liable under that insurance protection. Benoit J. C. Bouchard would be an "uninsured motorist" in that (1) the automobile owned and

operated by him, and which was in collision with the Langley vehicle, was without liability coverage and (2) Bouchard himself lacked liability coverage applicable to the circumstances. The defendant and its "insured" have already determined "by agreement" between them that the plaintiffs are "legally entitled to recover" against Bouchard damages for the "bodily injury" sustained by each of them insofar as the parties have stipulated in the instant proceedings that:

> "Gary Lee Langley, his wife, and children, were injured in said accident because of the negligent acts and omission of Benoit J. C. Bouchard and at all times Gary Lee Langley was in the exercise of due care."[1]

It is thus manifest that there is an actual and live controversy between the parties in which the only fundamental and dispositive question is whether the defendant company owes to the plaintiffs, under and by virtue of the Langley policy and P.L. of Me. 1967, Chapter 93, such damages for bodily injuries as each of them can prove resulted from the collision of June 3, 1968 and within the limits fixed by the applicable Financial Responsibility Law.

This issue of contract "construction" (even if it should eventuate as a question not of "construing" the intent of the parties but rather of determining whether the law will, in part, "construct" a contract for the parties by inserting, mandatorily, provisions into the contract regardless of the wishes of the parties) reveals the "presence of controversy, adversity and substance of interest and justiciability of issue", Jones v. Maine State Highway Commission et al., Me., 238 A.2d 226, 229 (1968), warranting the availability of Declaratory Judgment. The resolution of the question will "termi-

nate the uncertainty * * * giving rise to the proceeding." 14 M.R.S.A. Sec. 5958.

Because the parties have here stipulated the facts which establish that Bouchard is an "uninsured motorist" and that the "insured * * * is legally entitled to recover * * *" against Bouchard, the Court below was correct in entertaining Declaratory Judgment jurisdiction and in exercising discretion to enter a declaratory judgment. We intimate no opinion as to whether, absent such stipulated agreement as to the legal liability of the uninsured motorist, declaratory judgment procedures would be proper.

On the merits, the Court below decided against the contentions of the plaintiffs and held that the aforesaid "uninsured motorist" coverage was unavailable to the plaintiffs to impose liability on defendant because (1) the claim of plaintiffs seeks "the inclusion of a clause affording coverage * * * thus retrospectively amending the basic insurance contract," and (2) the statute fails to manifest "clearly" a legislative "interest" that the statute in issue be thus "retrospectively in operation."

Before this Court plaintiffs assert that the Court below erred in denying the existence of a "clear" legislative purpose that, commencing January 1, 1968, the automobile liability insurance contract of the plaintiff, Gary Langley, because it was in legal force on *that date and at all times thereafter* relevant in this proceeding and regardless of when it might have been issued and delivered or consummated, by operation of law incorporated the "uninsured motorist" protection; and that this coverage applied to the collision which occurred on June 3, 1968 while the Langley policy was still in force. Plaintiffs support their contentions with the arguments that (1) the statute is "remedial" in nature such

---

1. While there is no express stipulation regarding the due care of the plaintiffs other than Gary Lee Langley, the total record makes clear that no disagreement exists as to this aspect of the case. In any event, the explicitly stipulated "legal entitlement" of the plaintiff, Gary Lee Langley, to recover damages against Bouchard will suffice to support adjudication of the issues by Declaratory Judgment procedure.

that its scope should be interpreted liberally, and (2) the language of the statute is sufficiently plain to signify that it applies regardless of whether the Langley policy had been issued, delivered and completed in its coverage provisions prior to January 1, 1968, and that if such application be deemed "retrospective", the Legislature intended this type of retrospective operation.

Defendant counters by maintaining that if the statute is given the legal effect claimed by plaintiffs, it must be declared unconstitutional in this aspect, as being in contravention of the "Impairment of the Obligations of Contracts" clause of the Federal Constitution (Article I, § 10) as well as of the Constitution of the State of Maine (Article I, § 11).

■ We find it unnecessary to reach the constitutional issue. We hold that the Court below was correct in disposing of the case on the issue of statutory interpretation and in concluding P.L. of Me.1967, Chapter 93, lacks the retrospective scope claimed for it in this case by the plaintiffs.

We reject the contention of the plaintiffs that the language of the statute "any policy * * * shall contain" reveals a legislative intent that the statute shall apply to each automobile liability policy actually in force and effect at any time on or after January 1, 1968 regardless of every circumstance relating to the time that the contract might have been executed, issued, delivered, or to whether, or when, action affecting coverage might have been voluntarily undertaken by the contracting parties.

It may be correct that the language "any policy * * * shall contain" (emphasis supplied) is significantly broader and less stringently prospective than words such as:

"No automobile liability insurance * * * shall be delivered or issued for delivery"

which have been utilized in the statutes of other states and on the basis of which courts have held that retrospective effect will be denied. Allison v. Imperial Casualty & Indemnity Co., Fla.App., 222 So.2d 254 (1969); Ball v. California State Automobile Association Inter-Insurance Bureau, 201 Cal.App.2d 85, 20 Cal.Rptr. 31 (1962), Oatis v. Dairyland Insurance Co., 20 Mich.App. 367, 174 N.W.2d 35 (1969), and Pierce v. Hartford Accident & Indemnity Co., La.App., 184 So.2d 241 (1966). From this starting point, however, it fails to follow that the Maine Legislature's use of the word "any", by itself and merely because the word tends to delineate generality, suffices to establish with compelling cogency the legislative purpose insisted upon by plaintiffs—that P.L. of Me.1967, Chapter 93 commands that contracting parties who, prior to January 1, 1968, had negotiated and finally concluded their automobile liability insurance contract must, on or after January 1, 1968, reopen negotiations and arrive at a supplemental contract embodying some form of "uninsured motorist" coverage upon peril that should they fail so to act, the law automatically inserts such coverage into their previously completed insurance contract regardless of their actual intention.[2]

2. It must be observed that P.L. of Me. 1967, Chapter 93 is extremely vague in this respect insofar as it speaks only of "protection against uninsured motorists for bodily injury." The legislature utilizes a generalized concept without prescribing any specific minimal standard form and without indicating whether the insured is to have an option to reject the coverage such that waiver might be possible if he doesn't wish to pay for the extra premium.

Futhermore, when we become aware of the variations in the "uninsured motorist" coverages prevalent in the insurance industry, we catch a glimpse of the abundance of potential problems precipitated by the "shorthand" language of P.L. of Me.1967, Chapter 93.

On January 12, 1956 there appeared the "National Bureau of Casualty Underwriters, Family Protection Coverage Endorsement (Against Uninsured Motorists) No. A. 615, * * *. On May 1,

The generalizing word, "any," must be held without a plain and clear directive as to legislative intent when we advert to contingencies, for example, such as:

(1) Automobile liability insurance policies which might have been issued and delivered prior to January 1, 1968 and as to which the parties *never* took any *subsequent* action after they were once issued and delivered;

(2) Policies issued and delivered prior to January 1, 1968 and as to which the parties voluntarily made modifications of coverage (other than to include a form of uninsured motorist coverage) by Declaration, or endorsement, prior to January 1, 1968;

(3) Policies issued and delivered prior to January 1, 1968 but as to which *subsequently* to that date and *on or after January 1, 1968,* and before the occurrence of any incident covered by the policy, the parties voluntarily altered the coverage in some respect (other than by including a form of uninsured motorist protection); and

(4) Policies issued and delivered prior to January 1, 1968 but concerning which the contracting parties voluntarily introduced coverage changes (other than inclusion of a form of uninsured motorist protection) *on or after* January 1, 1968 and also *after* the occurrence of a collision covered by the policy.

We believe therefore, that the language of P.L. of Me.1967, Chapter 93, fails to convey an explicit delineation of legislative intent and must be considered ambiguous in relation to the situation now before this Court. Faced with the ambiguity the Court must seek other guides to the ascertainment of legislative purpose.[3]

Plaintiffs provide little meaningful assistance by labelling the statute "remedial" in an effort to induce this Court more readily to confer a retrospective application. Likewise of little benefit are quotations from cases stripped of the specific facts involved which plaintiffs have offered to infuse substantive content into the word, "remedial", quotations such as:

"Legislation which has been regarded as 'remedial' in its nature includes * * * remedying defects (of former laws) or mischiefs thereof implying an intention to reform or extend existing rights and having for their purpose *the promotion of justice and the advancement* of *public welfare."* (emphasis supplied by plaintiffs)

(Quoted by plaintiffs from In re Brown's Estate, 168 Kan. 612, 215 P.2d 203, 207 (1950).

The classification of statutes as "remedial" in a manner so comprehensive that, arguably, all police power legislation is embraced [4] erects a foundation far too ex-

---

1958, the standard endorsement was altered * * *. On January 1, 1963, another revised form was issued. * * * [A further] endorsement was issued on May 1, 1966."

"Although most companies that are members of the National Bureau or of the Mutual Insurance Rating Bureau conform their policies to the newest standard forms as soon as possible, several of the largest automobile liability insurance underwriters (Allstate, Nationwide and State Farm) are among the over 400 independent insurers not affiliated with either the National Bureau or the Mutual Insurance Rating Bureau that are free to draft their own forms. According to the National Association of Inde-

pendent Insurers, 'Companies affiliated with the Association write more passenger automobile insurance in the United States than the members of the mutual and stock rating bureaus combined, * * * ' "

Footnotes 15 and 16 of "Perspectives on Uninsured Motorist Coverage" by Alan I. Widiss, 62 Northwestern University Law Review 497, 501 and 502.

3. The legislative history offers no helpful indication of legislative intent.

4. Plaintiffs argue precisely on such police power basis in the instant case when they speak of the purposes of P.L. of Me.1967, Chapter 93 as being aimed at the further

tensive upon which to establish a principle which allows retrospective statutory scope and application.

For present purposes we find more helpful, and persuasive, the frequently mentioned analysis of the Supreme Court of the United States in Winfree v. Northern Pacific Railway Company, 227 U.S. 296, 33 S.Ct. 273, 57 L.Ed. 518 (1913).[5]

"Plaintiff, to support his contention that the act of Congress has retroactive operation, presents a very elaborate argument based on the extensive effect which courts have given to remedial statutes, applying them, it is contended, to the past as well as to the future. The Court of Appeals met the argument, as we think it should be met, by saying that statutes that had received such extensive application were 'such as were intended to remedy a mischief, to promote public justice, to correct innocent mistakes, to cure irregularities in judicial proceedings or to give effect to the acts and contracts of individuals according to the intention thereof.' * * * It is true that it is said that there was liability on the part of the defendant for its negligence before the passage of the act of Congress and the act has only given a more efficient and a more complete remedy. It, however, takes away material defenses, defenses which did something more than resist the remedy; they disproved the right of action. Such defenses the statute takes away, and that none may exist in the present case is immaterial. *It is the operation of the statute which determines its character.* The Court of Appeals aptly characterized it, and we

may quote from its opinion * * * : 'It is a statute which permits recovery in cases where recovery could not be had before, and takes from the defendant defenses which formerly were available, defense which in this instance existed at the time when the contract of service was entered into and at the time when the accident occurred.' Such a statute, * * * should not be construed as retrospective. *It introduced a new policy and quite radically changed the existing law.* (emphasis supplied) (p. 301 of 227 U.S., p. 273 of 33 S.Ct.)

In the case under consideration P.L. of Me.1967, Chapter 93 created a new public policy. If plaintiffs' contentions are sustained, the statute would radically affect rights and obligations which the parties to an automobile liability insurance contract, prior to the effective date of the statute, had fully concluded as they had deemed appropriate. The new statute would go so far, plaintiffs contend, as mandatorily to impose new rights and obligations upon the parties regardless, and in spite, of their own settled contractual intent or desires. To hold a law operating with such drastic impact as to modify an insurance coverage already completed by the parties to be merely "remedial" in character and effect would be to lose focus upon reality in the obscurity of semantic fog.

We invoke the long and firmly established principle of statutory interpretation that:

"A statute shall not have retrospective operation unless its terms are so strong, clear, and imperative that no other

---

regulation of a highly regulated industry by inserting, mandatorily, into automobile liability insurance contracts a coverage which provides "uninsured motorist" benefits regardless of the intention of the parties,—thereby to promote the public welfare by affording the beneficient results, as soon as possible, of avoiding financial hardships which are imposed on persons injured by the negligence of "uninsured motorists" who, too frequently, are "judgment-proof."

5. In this case suit had been brought under and by virtue of "An Act Relating to the Liability of Common Carriers by Railroads to their Employees in Certain Cases," passed April 22, 1908, 35 Stat. 65. The suit was based on a wrongful death of a minor who had been killed while acting as a fireman upon a freight locomotive. The death occurred prior to the passage of the Act.

meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied \* \* \*'' In re Guilford Water Company, 118 Me. 367, 375, 108 A. 446, 451 (1919).

Here, the legislature's use of the word "any" to modify the automobile liability insurance contracts covered by the statute, standing by itself and without legislative resort to supplemental language convincingly connoting specific retrospective intent—(language such as "regardless of when executed, issued or delivered," or "whether executed, issued or delivered before or after the effective date hereof,") —fails to convey a meaning "clear, strong and imperative" in favor of retrospective operation. We adhere, therefore, to the rule "strictly followed by this Court" that:

"barren of \* \* \* express commands or convincing implications \* \* \* statutes will be considered to have a prospective operation only." Miller v. Fallon, 134 Me. 145, 148, 183 A. 416, 417 (1936).

We decide that since (1) the Langley automobile liability insurance policy had been executed, issued and delivered, as well as altered by an updated Declaration on December 26, 1967, *all prior to January 1, 1968, the effective date of P.L. of Me. 1967, Chapter 93,* and (2) no action affecting in any respect any aspect of the insurance coverage of the Langley insurance contract had been taken by the parties *subsequent* to January 1, 1968, P.L. of Me. 1967, Chapter 93 was without application to confer upon the plaintiffs the benefits of "uninsured motorist" coverage under the policy in relation to the collision of June 3, 1968.[6]

Appeal denied.

MARDEN, J., sat at argument, but retired before the decision was rendered.

6. It is to be noted that in 1969 the Legislature enacted a complete revision of the insurance laws in the form of a new Maine Insurance Code, 24–A M.R.S.A. In Chapter 39, dealing with casualty insurance contracts, Section 2902 contains the provisions relating to "uninsured vehicle" coverage. A standard minimum form of coverage is prescribed and its application is delineated to be with prospective intent by the use of the language, "No policy \* \* \* shall be delivered or issued for delivery in this State \* \* \* unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured or hit-and-run motor vehicles \* \* \*." [Enacted effective January 1, 1970].