Lillian HIGGINS, Administratrix of the Estate of Grant Higgins, Deceased, and Lillian Higgins, Individually, Plaintiffs-Respondents,

v.

MFA MUTUAL INSURANCE CO., Defendant-Appellant.

No. 37510.

Missouri Court of Appeals, St. Louis District, Division Three.

March 15, 1977.

Motion for Rehearing and for Transfer Denied April 15, 1977.

Application to Transfer Denied June 14, 1977.

Godfrey, Vandover & Burns, Inc., Samuel T. Vandover, James E. Godfrey, St. Louis, for defendant-appellant.

Robert F. Ritter, Gray & Ritter, St. Louis, for plaintiffs-respondents.

KELLY, Presiding Judge.

This appeal from a judgment of the Circuit Court of St. Louis County awarding the plaintiff-respondent $20,000.00 aggregate damages in a declaratory judgment suit presents a case of first impression in Missouri, i. e., whether the enactment of § 379.-203 RSMo.1967 Supp., wrote into a policy of automobile liability insurance the uninsured motorist coverage therein mandated although the policy of automobile liability insurance had been issued prior to the effective date of the enactment of said statute and did not contain uninsured motorist coverage when issued. We hold that it did not and therefore reverse the judgment of the Circuit Court and enter judgment for the defendant-appellant. Rule 84.14 V.A. M.R.

Plaintiff-respondent's petition was in two counts. Count I set forth the claim of plaintiff in her capacity as the administratrix of the Estate of Grant Higgins, her deceased husband, and Count II, her individual claim. The damages sought in each Count were $10,000.00, an aggregate of

$20,000.00. In each instance the damages sought were the maximum coverage required by § 379.203.[1] Her theory of the case was that uninsured motorist coverage was engrafted onto the automobile liability insurance policy "by operation of law." Defendant-appellant's Answer was a general denial—although it did admit certain allegations of plaintiff-respondent's petition—but also contained an allegation by way of an affirmative defense that the policy of insurance was issued prior to the effective date of the Statute, October 13, 1967, and therefore the statutory mandate was inapplicable to the policy of insurance.[2]

The facts are not in dispute. A "Stipulation of Facts" was filed in the trial court by the parties as follows: Lillian Higgins and Grant Higgins were injured in an automobile collision occurring on February 24, 1968, in Washington, Missouri, with a car negligently driven by one Catherine Politte; Ms. Politte's negligence directly caused the Higginses serious and permanent bodily injuries; judgments were obtained against Ms. Politte upon a petition for damages filed by plaintiff for bodily injury and property damages resulting from the occurrence in the sum of $47,500.00 in the Circuit Court of Washington County and have become final; at the time of the automobile collision Ms. Politte was the operator of an uninsured motor vehicle within the terms of § 379.203. Both of the Higginses were occupants of an automobile which was an insured vehicle under a policy of automobile liability insurance issued by the defendant-appellant to Grant Higgins, now deceased. Between February 12, 1959, to and including the time of the accident on February 24, 1968, Grant Higgins and Lillian Higgins carried at least one policy of automobile liability insurance with the defendant-appellant; and they carried their automobile

liability insurance policy exclusively between the dates aforesaid through Lawrence Giles, an agent, servant and employee of the defendant-appellant acting within the scope and course of his authority. The deceased, Grant Higgins, on June 16, 1964, applied for the insurance policy numbered 24–1–442685–003 and coverages for Bodily Injury Liability and Property Damage Liability were issued to him. At the time these coverages were issued to Mr. Higgins, uninsured motorist insurance coverage was available for purchase from the defendant-appellant but was not offered to him by the defendant-appellant. At no time, before or after June 16, 1964, was uninsured motorist coverage offered to him by the defendant-appellant nor did he reject same in writing. The policy of insurance was "renewed" by Mr. Higgins on May 27, 1965, May 27, 1966, May 27, 1967 and April 25, 1968, when premiums for the policy were due. The policy of insurance was cancelled on August 14, 1970. The policy of insurance was a continuing one, which would continue indefinitely unless a change was requested by the defendant-appellant or by Mr. Higgins. The policy provided that the premiums could be paid on a quarterly, semi-annual or annual basis at the discretion of the policyholder. From the initial issuance of the policy until April 25, 1968, premiums were paid on an annual basis; but after April 25, 1968, they were paid on a semi-annual basis. Section 379.203 became effective on October 13, 1967, and prior to that date there was no Missouri law obligating an insurance company to include uninsured motorist coverage in policies of automobile liability insurance delivered or issued for delivery in Missouri. The policy of automobile liability insurance issued to Mr. Higgins was last "renewed" on May 27, 1967, and continued in effect from the date of renewal to May

1. All references to § 379.203 are to RSMo.1967, Supp.

2. Defendant-appellant, further alleged as an alternative affirmative defense that if § 379.203 is applicable to provide plaintiffs uninsured motorist coverage by operation of law, it is then unconstitutional by reason of being repug-

nant to Article I, § 13, of the Missouri Constitution, and Article I, § 10, paragraph 1, and the Fourteenth Amendment to the United States Constitution. We are without jurisdiction to decide these constitutional issues. Art. V, § 3, Constitution of Missouri, 1945.

27, 1968. This policy of insurance was in effect on February 24, 1968.

The trial court filed Findings of Fact and Conclusions of Law. In its Findings of Fact it found that the defendant-appellant had sufficient notice of the effective date of the statute, October 13, 1967, to notify each of its insureds of their right to the required Uninsured Motorist coverage as of that date, or, in the alternative, of their right to reject uninsured motorist coverage in writing, but that it failed to so notify either of the Higginses and at no time obtained their rejection in writing of such coverage as required by the statute. In its Conclusions of Law the trial court found that § 379.203, effective October 13, 1967, was mandatory in its requirement that all policies of automobile insurance written or issued in the State of Missouri and in force as of the effective date of said statute contain Uninsured Motorist coverage in the minimum limits unless such coverage had been rejected in writing by the named insured. Since neither of the Higginses rejected such coverage in writing at any time prior to February 24, 1968, they were afforded uninsured motorist coverage by operation of law on that date and were covered by said uninsured motorist coverage when the accident occurred, and therefore Mrs. Higgins was entitled to judgment against the defendant-appellant in the sum of $10,000.00 for the death of her husband and $10,000.00 for her damages, a total of $20,000.00.

On August 1, 1975, after the aforesaid order of July 25, 1975, entering judgment for plaintiff-respondent was entered, the defendant-appellant filed a "Motion of Defendant For Order Making New Findings of Fact and to Direct Entry of A New Judgment" which was called up, heard, and overruled on October 10, 1975. Notice of appeal was filed from the judgment on October 17, 1975.

■ On appeal the appellant contends that the trial court erred in finding and concluding that the Uninsured Motorist Law, § 379.203, applied to require this policy of automobile liability insurance, issued before the effective date of said law, to provide uninsured motorist coverage because this finding and conclusion is contrary to the expressed intent of the Missouri legislature. The thrust of appellant's argument is that for the trial court to arrive at this conclusion the statute must be applied retroactively, and for this to be so, there must be a clear expression of a legislative intent to that effect, otherwise the statute may be applied prospectively only. The respondent retorts that the trial court, in fact, has given the statute prospective operation only, because appellant's duty to afford its insureds the uninsured motorist coverage mandated by the statute began as of the effective date of the statute and continued thereafter.

The statute provides that "No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle *shall be delivered or issued for delivery* in this state . . . unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, . . ., including death, resulting therefrom; . . ." (Emphasis supplied). Appellant contends that the intent of the legislature that the statute shall apply prospectively only is evidenced by the terms "shall be delivered or issued for delivery;" and that since this policy of insurance was delivered and issued for delivery prior to the effective date of the statute and there had been no reissuance or redelivery of the policy between the effective date of the statute and February 24, 1968, the date of the accident, the uninsured motorist coverage was not in force.

Respondent replies to this argument by pointing out that this particular policy of automobile liability insurance was a "continuing one" which would continue for an indefinite time; that if appellant's argu-

ment is sound, then the policy would never be "delivered or issued for delivery" after its initial issuance to Mr. Higgins on June 16, 1964, and the Higginses would never have been afforded the mandatory coverage until they purchased an entirely new policy of insurance.

The cases our research has surfaced on the question whether uninsured motorist coverage required by an uninsured motorist statute with terminology similar to § 379.-203 is to be afforded an insured under an automobile liability policy of insurance uniformly hold that the statute does not apply retroactively to policies already in effect at the time the statute takes effect. *Ball v. California State Auto. Ass'n Inter-Ins. Bureau*, 201 Cal.App.2d 85, 20 Cal.Rptr. 31, 33[1] (1962); *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, 549 P.2d 1354, 1360[1] (1976); *Liberty Mutual Insurance Company v. Rambin*, 185 So.2d 851, 852[1] (La.App.1966); *Pierce v. Hartford Accident & Indemnity Co.*, 184 So.2d 241, 244[1] (La. App.1966); *Langley v. Home Indemnity Company*, 272 A.2d 740, 744[2] (Me.1971); *Baune v. Farmers Insurance Exchange*, 283 Minn. 54, 166 N.W.2d 335, 337[1] (1969); *Lee v. Michigan Millers Mutual Insurance Company*, 250 S.C. 462, 158 S.E.2d 774, 775[1] (1968). See also *Couch on Insurance*, 2d, § 45:622, p. 569.

In construing the terms "issued or delivered" in § 11580.2 of the Insurance Code of that state, the court in *Ball v. California State Auto. Ass'n Inter-Ins. Bureau*, supra, 20 Cal.Rptr. at p. 32, said:

"The issue of the case turns upon the simple question as to whether the contract of insurance conflicted with section 11580.2 of the Insurance Code· if there were such conflict, the contract would pick up and incorporate the legislative provision. The legislative provision, however, reads that no liability policy shall be *issued* or *delivered* unless it provides uninsured motorists protection. The terms 'issued' and 'delivered' must refer to the original issuance and delivery of the policy; they are fixed as to time and do not stretch into infinity."

Further, 20 Cal.Rptr. at p. 33, the court continued:

". . . Here the legislation refers to policies which 'shall be issued or delivered * * *.' The specific act of issuance and delivery predated the legislative provision and cannot conceivably operate to bring within its meaning later legislation which was enacted after such issuance and delivery. The later legislation embraced only policies thereafter issued or delivered; it did not purport to affect the existing contracts, and, indeed, according to appellants, 'could not, *of its own force, affect*' appellant Ball's existing policy, 'under the Federal and California Constitutions.' "

We conclude that the General Assembly in enacting the Missouri Uninsured Motorist Law intended that it be applied prospectively, and not retroactively. We do not, therefore, reach the question whether the General Assembly, had it so desired, could have made the statute have retrospective application because that question is not necessary to our decision in this case.

However, respondent contends that validity of the trial court's judgment is not dependent upon whether the Law could be applied retrospectively, because the trial court found, and respondent contends, that the newly enacted mandatory uninsured motorist coverage was not made applicable as to her until the effective date of the statute, and therefore was, in fact, applied prospectively by operation of law.

According to this approach, between the time the law was passed in the General Assembly and signed by the Governor and the date it became effective, every insurance company in the State of Missouri writing automobile liability insurance policies covering liability arising out of the ownership, maintenance, or use of any motor vehicle in this state, was required to notify each of its insureds of the availability of the uninsured motorist insurance by reason of the newly enacted statute so that the insured could exercise his right to accept or

reject such coverage in writing and pay the additional premium incident thereto, except were he to reject the coverage. Appellant, on the other hand, takes the position that it was only necessary for the insurer to notify insureds of the availability of this coverage and their right to accept or reject it at the time each of its policies came up for renewal. As respondent argues, if appellant's position is correct, this would result in a large number of Missouri residents who operate motor vehicles on the public highways of the state doing so without uninsured motorist coverage until such time as they either had delivered or issued for delivery to them a new policy of insurance, or, their premium due date for renewal of their current policy of insurance came to pass.

While these are both arguments involving questions of the practicalities of the insurance business and the public policy behind the enactment of the law, we conclude from the phraseology of the law itself that the immediacy of the mandatory insurance was not clearly enunciated and that future compliance as automobile liability policies expired or came up for renewal was intended. Had the legislature so desired, it might have provided as the respondent argues; but, as we view the question, it did not. The entire thrust of the statute is in futuro. To hold otherwise is to interfere with contractual relationships already in existence and to write a new contract for the contracting parties during the course of performance of the existing contract. If the statute is made applicable at the commencement of the contractual relationship, or as each new period of the contract is commenced, there is less interference with the contractual relationship and more continuity permitted. Anyone desiring uninsured motorist coverage is not precluded by the statute from purchasing it even though his contract of insurance has not run its course; all he need do is to apply and pay an additional premium. Legislators are men of practical knowledge, aware of everyday business, and had they intended the result championed by the respondent, could have done so clearly and explicitly. They did

not. We conclude, therefore, that plaintiff-respondent was not afforded uninsured motorist coverage by operation of law on the date of the accident, as found by the trial court. We reverse, and enter judgment for the appellant. Rule 84.14 V.A.M.R.

SIMEONE and GUNN, JJ., concur.