Filed 10/9/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BLAKELY MCHUGH et al., | D072863 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2014-00019212-CU-IC-CTL) |
| PROTECTIVE LIFE INSURANCE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Winters & Associates and Jack B. Winters, Jr., Georg M. Capielo, Sarah D. Ball; Williams Iagmin and Jon R. Williams for Plaintiffs and Appellants.

Law Offices of Daniel D. Murphy and Daniel D. Murphy for California Advocates for Nursing Home Reform, Inc., as Amicus Curiae on behalf of Plaintiffs and Appellants.

Grignon Law Firm and Margaret M. Grignon; Maynard Cooper & Gale and C. Andrew Kitchen, Alexandra V. Drury, John C. Neiman, Jr.; Noonan Lance Boyer & Banach and David J. Noonan for Defendant and Respondent.

Alston & Bird and Thomas A. Evans for American Council of Life Insurers, as Amicus Curiae on behalf of Defendant and Respondent.

This appeal raises one fundamental issue: whether Insurance Code sections 10113.71 and 10113.72[1] ("the statutes"), which came into effect on January 1, 2013, apply to term life insurance policies issued before the statutes' effective date. In 2005, Protective Life Insurance Company (Protective Life) issued William Patrick McHugh a 60-year term life policy (the policy) that provided for a 31-day grace period before it could be terminated for failure to pay the premium.[2] McHugh failed to pay the premium

---

[1] Undesignated statutory references are to the Insurance Code. Assembly Bill No. 1747 created the statutes. Section 10113.71 states: "(a) Each life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period. [¶] (b)(1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium. [¶] (2) This subdivision shall not apply to nonrenewal. [¶] (3) Notice shall be given to the policy owner *and to the designee* by first-class United States mail within 30 days after a premium is due and unpaid. However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee. [¶] (c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided." (Italics added.)

Section 10113.72 states: "(a) An individual life insurance policy shall not be issued or delivered in this state until the *applicant* has been given the right to designate at least one person, in addition to the *applicant*, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each *applicant* with a form to make the designation. That form shall provide the opportunity for the *applicant* to submit the name, address, and telephone number of at least one person, in addition to the *applicant*, who is to receive notice of lapse or termination of the policy for nonpayment of premium." (Italics added.)

[2] Chase Insurance Life Company issued McHugh the policy on March 1, 2005, and Protective Life subsequently purchased Chase Insurance.

2

due on January 9, 2013, and his policy lapsed 31 days later. McHugh passed away in June 2013.

Thereafter, Mchugh's daughter, Blakely McHugh, the designated beneficiary under the policy, and Trysta M. Henselmeier (appellants)[3] sued Protective Life for breach of contract and breach of the implied covenant of good faith and fair dealing, claiming Protective Life failed to comply with the statutes' requirement that it provide a 60-day grace period before it terminated the policy for nonpayment of premium.

The parties filed various trial court motions, and Protective Life, relying largely on interpretations of the Department of Insurance (the Department) argued that the statutes do not apply retroactively to McHugh's policy and the claim. The court rejected Protective Life's arguments and ruled that the statutes applied to the claim. The matter proceeded to jury trial and Protective Life prevailed. Appellants appeal from both a special verdict in favor of Protective Life and an order denying their motion for judgment notwithstanding the verdict (JNOV).

Pursuant to Code of Civil Procedure section 906, Protective Life requests that we affirm the verdict on the additional ground that the statutes do not apply to the policy and the trial court erred by ruling to the contrary when it denied Protective Life's motion for a directed verdict. Appellants oppose the request, claiming that Protective Life should have filed an appeal. We grant Protective Life's request. "It is a general rule a

---

3    To avoid confusion, we refer to Blakely by her first name. Henselmeier is Blakely's mother, McHugh's successor-in interest, and a contingent beneficiary under the policy.

3

respondent who has not appealed from the judgment may not urge error on appeal. [Citation.] A limited exception to this rule is provided by Code of Civil Procedure section 906, which states in pertinent part: 'The respondent . . . may, without appealing from [the] judgment, request the reviewing court to and it may review any of the foregoing [described orders or rulings] for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken.' 'The purpose of the statutory exception is to allow a respondent to assert a legal theory which may result in affirmance of the judgment.' " (*Hutchinson v. City of Sacramento* (1993) 17 Cal.App.4th 791, 798.)

We affirm the judgment on the additional ground that, as a matter of law, the court erred by denying Protective Life's motion for a directed verdict. As we discuss below, the statutes apply only to policies issued or delivered after January 1, 2013, and not to McHugh's policy. Accordingly, we need not address the other contentions appellants raise[4] because they are all premised on the erroneous assumption that sections 10113.71 and 10113.72 apply retroactively to the policy and claim.

## DISCUSSION

---

[4] Appellants contend the court erroneously (1) declined to decide as a matter of law whether Protective Life complied with sections 10113.71 and 10113.72 and provided McHugh with a 60-day grace period; and instead erroneously permitted the jury to decide that issue; (2) declined to instruct the jury that Protective Life was required to "strictly comply" with the new statutes; and (3) instructed the jury that McHugh had a duty to mitigate his damages. They further contend the instructional errors were prejudicial because the verdict was inconsistent.

The Insurance Code states the Insurance Commissioner "shall perform all duties imposed upon him or her by the provisions of this code and other laws regulating the business of insurance in [California], and shall enforce the execution of those provisions and laws." (§ 12921.1, subd. (a).) Furthermore, insurance companies must submit "[a]ll policies, certificates of insurance, notices of proposed insurance, applications for insurance, endorsements and riders delivered or issued for delivery in [California] and the schedules of premium rates pertaining thereto . . . [to] the commissioner." (§ 779.8.) In short, insurance is a regulated industry. The Department is charged with ensuring that all policies issued in the State of California contain every provision required by law.

In discharging its statutory duties, the Department concluded sections 10113.71 and 10113.72 apply only to insurance policies issued after January 1, 2013. The Department published its determination in a document titled, "SERFF Instructions for Complying with [Assembly Bill No.] 1747," which states, "All life insurance policies issued or delivered in California on or after [January 1, 2013] must contain a grace period of at least 60 days." SERFF (System for Electronic Rate and Form Filing) is an internet-based system that enables insurance companies such as Protective Life to submit rate and form filings to the Department for approval of insurance products and changes to existing products. The Department mandates the use of SERFF and provides regulatory guidance to insurers through SERFF, including guidance for compliance with the statutes. The court in *Bentley v. United of Omaha Life Insurance Co.* (C.D. Cal. Sept. 14, 2016, No.

5

2:15-cv-07870) 2016 WL 7443190[5] explained that the SERFF instructions are "available on the SERFF website where the [Department], a governmental agency, places instructions for any insurance company seeking [Department] approval."

Senior Department personnel consistently communicated the Department's position in response to inquiries from representatives of the insurance industry seeking advice about the statutes' applicability. For example, in a March 2013 letter, the Department's Assistant Chief Counsel of the Policy Approval Bureau, Leslie Tick, stated: "In general, new laws take effect on a going forward basis so that everyone knows what the law is when they enter into an agreement, such as an insurance policy. If the statutes had retroactive effect they would effect [*sic*] actions which have already occurred, and which were lawful at the time, making them retroactively unlawful. Parties to a contract would have no certainty as to the terms of their agreement if the Legislature could change those terms retroactively. [¶] Generally a policy is 'issued or delivered' just once—when it is new. A statutes [*sic*] would have to say 'and renewed' in order to apply to renewals, because presumably those renewed policies were issued or delivered before the Jan[uary] 1, 2013 effective date. [¶] For these reasons the statutory changes brought by [Assembly Bill No. 1747], apply on a going forward basis—that is, the changes apply to policies issued or delivered on or after [January 1, 2013]. [Assembly Bill No. 1747] does not

---

5 "It does not violate the California Rules of Court to cite an unpublished federal opinion. [Citations.] They may be persuasive, although not binding, authority." (*Western Heritage Ins. Co. v. Frances Todd, Inc.* (2019) 33 Cal.App.5th 976, 990.)

require insurers to extend the grace period for policies that are already in force and does not require insurers to extend the grace period when policies that were issued prior to [January 1, 2013], are renewed."

In a December 2012 e-mail to an insurance company's representative, Department attorney Nancy Hom stated, "The requirements of [Assembly Bill No. 1747] are not retroactive. The bill applies to policies issued or delivered on or after January 1, 2013, not before." Also, in a July 2016 e-mail, attorney Tick informed an inquiring attorney that the Department had issued a SERFF instruction on this issue when the legislation was newly enacted, and added that Assembly Bill No. 1747 "applies to new policies issued on or after [January 1, 2013, but] not to policies renewed on or after [January 1, 2013]."

The California Supreme Court recently reminded us of the weight to accord to an agency's interpretation of law: " 'Deference to administrative interpretations always is "situational" and depends on "a complex of factors" [citation], but where the agency has special expertise and its decision is carefully considered by senior agency officials, that decision is entitled to correspondingly greater weight.' " (*Christensen v. Lightbourne* (2019) 7 Cal.5th 761, 771.) Courts "accord[] great weight and respect to the administrative construction" of a statute by the agency entrusted with enforcing it. (*Yamaha Corp. v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12.) That is particularly so when the statute addresses "technical" matters within the agency's "expertise." (*Ibid.*)

7

We are required to give deference to the Department's interpretation, as long as it is reasonable and consistent with the language of the statutes. (*Southern California Edison Co. v. Peevey* (2003) 31 Cal. 4th 781, 796.) " ' "Our fundamental task . . ." ' . . . ' "is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." ' " (*People v. Pennington* (2017) 3 Cal.5th 786, 795.) We focus first on " 'the statute's actual words, the "most reliable indicator" of legislative intent, "assigning them their usual and ordinary meanings." ' " (*Ibid*.) We view the statutory language in context, and do not determine its meaning " 'from a single word or sentence.' " (*Ibid.*) "[A]pparent 'ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes.' " (*Ibid*.)

If the statutory text "is unambiguous and provides a clear answer, we need go no further." (*Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 758; see *Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1491.) However, if the statutory language is unclear, a court may resort to other interpretive aids, including the statute's legislative history and " ' "the wider historical circumstances of its enactment." ' " (*Carmack v. Reynolds* (2017) 2 Cal.5th 844, 850.) Courts may also consider the purpose of the statute, the evils to be remedied, and the public policy sought to be achieved. (*Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198; see *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617.) We review de novo questions of statutory interpretation. (*Christensen v. Lightbourne, supra,* 7 Cal.5th at p. 771.)

8

Assembly Bill No. 1747 contained three related sections that were retained in the final legislation: First, it added section 10113.71, requiring that every term life insurance policy "issued or delivered" in California contain a provision giving the insured a grace period of at least 60 days from the premium due date, and requiring that the insurer notify the insured and his or her "designee named pursuant to Section 10113.72" if termination of the policy is for nonpayment of premium. (Assem. Bill No. 1747 (2011-2012 Reg. Sess.) § 1.) Second, it added section 10113.72, mandating that every life insurance policy "issued or delivered" in California grant the "applicant" the right to designate at least one other person to receive notice of lapse or termination of a policy for nonpayment of premium. (Assem. Bill No. 1747 (2011-2012 Reg. Sess.) § 2.) Third, it amended section 10173.2 to provide that "[w]hen a policy of life insurance is, *after the effective date of this section*," assigned in writing as security for an indebtedness, the insurer shall, upon receiving written notice of name and address of the assignee, mail to the assignee a written notice "not less than 30 days prior to the final lapse of the policy." (Assem. Bill No. 1747 (2011-2012 Reg. Sess.) § 3.) (Italics added.)

In evaluating whether the statues apply retroactively, we bear in mind that "a statute may be applied retroactively only if it contains express language of retroactivity *or* if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application." (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 844.) "The quest for legislative intent is not unbounded: '[I]t still remains true, as it always has, that there can be no intent in a statute not expressed in its words, and there can be no intent upon the part of the framers of such a statute which does not

9

find expression in their words.' [Citations.] . . . 'Words may not be inserted in a statute under the guise of interpretation.' " (*City of Sacramento v. Pub. Employees' Ret. Sys.* (1994) 22 Cal.App.4th 786, 793-794.)

Assembly Bill No. 1747's provisions indicate the new law applies only to term life insurance policies issued or delivered after January 1, 2013. Specifically, section 10113.72, subdivision (a) states the policy "shall not be issued or delivered" until the "applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse of termination of a policy for nonpayment of premium." This provision clearly does not apply to policies issued before the statute's effective date because an existing policyholder is not—and by definition cannot be—an "applicant." A federal district court has similarly noted that "a plain reading of" the language " 'policies *shall not be issued until*' " in this subdivision contemplates "no retroactive application." (*Avazian v. Genworth Life & Annuity Ins.* (C.D. Cal. Dec. 4, 2017 No. 2:17-cv-06459) [2017 WL 6025330], *2 fn. 2, quoting Ins. Code, § 10113.72, subd. (a), italics added.) Appellants conceded at trial that this provision did not apply to McHugh because he was not an "applicant" on January 1, 2013.

Section 10113.71, subdivision (b)(1) provides: "A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium." The use of the term

10

"designee" indicates a notice of pending lapse and termination only applies to term life insurance policies issued after January 1, 2013 because the "right to . . . designate" exists only in policies issued after that date.

The statutes were enacted at the same time and involved the same subject matter. "[C]ourts may conclude that the Legislature would not intend one subsection of a subdivision of a statute to operate in a manner 'markedly dissimilar' from other provisions in the same list or subdivision." (*Grafton Partners L.P. v. Super. Ct.* (2005) 36 Cal. 4th 944, 960.)[6]

Sections 10113.71, subdivision (a)(1) and 10113.72, subdivision (a)(1), refer to term life insurance policies "issued or delivered," a term that in California case law imports prospective application: "The terms 'issued' and 'delivered' must refer to the original issuance and delivery of the policy; they are fixed as to time and do not stretch into infinity." (*Ball v. California State Auto. Assn. Inter-Ins. Bureau* (1962) 201 Cal.App.2d 85, 87 [addressing uninsured motorist law].) Therefore, as this policy was issued and delivered to McHugh in 2005, it could not incorporate the statutory amendments that became effective in 2013. Here, as in *Ball,* "[t]he specific act of issuance and delivery predated the legislative provision and cannot conceivably operate to bring within its meaning later legislation which was enacted after such issuance and

---

6    As noted, Assembly Bill No. 1747 amended section 10173.2 to provide a 30-day deadline that applies to assignments of insurance policies entered into "after" the statute's effective date. We also conclude that, by its own terms, this section requires prospective application.

11

delivery. The later legislation embraced only policies thereafter issued or delivered; it did not purport to affect existing contracts, and, indeed . . . 'could not, *of its own force, affect*' [the] existing policy, 'under the Federal and California Constitutions.' " (*Ball, supra,* at p. 88.) Strictly speaking, term life insurance policies are issued only once.

"When the Legislature enacts language that has received definitive judicial construction, we presume that the Legislature was aware of the relevant judicial decisions and intended to adopt that construction." (*Foley v. Interactive Data Corp.* (1988) 47 Cal. 3d 654, 675.) Here, we presume the Legislature was aware of the customary interpretation of the phrase "issued or delivered."

We are not persuaded by appellants' argument based on section 10113.71's use of the words "each policy," which imports inclusiveness, and "shall," which signifies something mandatory, that there are "no limitations, qualifiers, or exemptions to those statutes' mandates, or any other indication that they apply only to newly issued insurance policies." This argument takes those words out of context and ignores the term "issued or delivered." There is no dispute that the word "shall" is ordinarily " 'used in laws, regulations, or directives to express what is mandatory.' " (*Austin v. Dept. of Motor Vehicles* (1988) 203 Cal.App.3d 305, 309.) But appellants' argument begs the question whether the 60-day grace period is mandatory in all term life insurance policies whenever

issued or only in those policies issued after January 1, 2013. For the reasons stated above, we conclude the latter interpretation is the correct one.[7]

The Legislature knows how to specify that statutory changes apply to insurance policies then in effect. It could have simply stated it applied to all policies "in force." For example, section 10235.95 states it applies to all "policies in force, regardless of their dates of issuance." We thus infer that the Legislature purposefully elected not to use such language of retroactivity in sections 10113.71 and 10113.72.

The California Supreme Court has held: "It is well[-]settled that insurance policies are governed by the statutory and decisional law in force at the time the policy is issued. 'Such provisions are read into each policy issued thereunder, and become a part of the contract with full binding effect upon each party.' [Citations.] Based upon the theory that 'a statute should be given the least retroactive effect that its language reasonably permits' [citation], this rule is followed even though there has been a subsequent amendment or repeal of the statute incorporated into the policy." (*Interinsurance Exch. of Auto. Club of S. Cal. v. Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 149.) Here, McHugh's policy is governed by the regulations in effect when it was issued in 2005, and the subsequently enacted sections 10113.71 and 10113.72 are not incorporated into the policy. "As the United States Supreme Court has consistently stressed, the presumption that legislation operates prospectively rather than retroactively

---

7       Another ground for rejecting appellants' argument is that the word "each" in section 10113.71, subdivision (a) was added by amendment effective January 1, 2014, after McHugh's death and the purported breach of contract. The language in effect at the time of the purported breach of contract should govern the claim.

13

is rooted in constitutional principles: 'In a free, dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions. [¶] It is therefore not surprising that the antiretroactivity principle finds expression in several provisions of our Constitution. The Ex Post Facto Clause flatly prohibits retroactive application of penal legislation . . . . The Fifth Amendment's Takings Clause[, and] [t]he Due Process Clause also protect[] the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the [Due Process] Clause 'may not suffice' to warrant its retroactive application." (*Myers v. Philip Morris, supra,* 28 Cal.4th at p. 841, quoting *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 265-266.)

For the reasons stated above, we conclude the Department's interpretation that the statutes apply only to term life insurance policies issued after January 1, 2013, is reasonable and correct. We therefore "accord[] great weight and respect to the administrative construction" of a statute by the agency entrusted with enforcing it (*Yamaha Corp. v. State Bd. of Equalization, supra,* 19 Cal.4th at p. 12), particularly because that interpretation is, as here, "contemporaneous with legislative enactment of the statute." (*Ibid.*)

In reaching our conclusion, we acknowledge that we are somewhat at odds with the amicus brief filed by the California Advocates for Nursing Home Reform, Inc. Amicus curiae contends Assembly Bill No. 1747's author's intent was that the statutes apply to all term life insurance policies whenever issued. This could be one

14

interpretation of the author's intent, which is stated in a summary of the bill at the third reading in the Assembly: "According to the author, the bill provides consumer safeguards from which people who have purchased life insurance coverage, especially seniors, would benefit." (Assem. Bill No. 1747, 3d reading May 9, 2012, (2011-2012 Reg. Sess.) p. 2.) However, we need not resolve that question, because our task is not to determine the author's intent but the intent of the Legislature. Legislative intent and the intent of the author are not necessarily the same. It is clear from the legislative history that the author's intent—in many respects—was not followed by the Legislature as there were many deletions from and amendments to the original bill. It is noteworthy that the amicus brief fails to analyze any of the statutory language or address the case law governing when statutes will be deemed to apply retroactively. We see no reason to ignore the wording of the statutes as enacted based solely on the author's purported intent. Amicus curiae also claims special authority because it "was very active in the crafting of [Assembly Bill No. 1747]." But the legislative history also shows the involvement and support of the Department in the passage of Assembly Bill No. 1747. The amicus brief fails to address any of the constitutional concerns raised by the Department and why we should ignore the Department's interpretation.

DISPOSITION

15

The judgment is affirmed.  Each party is to bear its own costs on appeal.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.