**Loretta M. ST. PIERRE**

v.

**NORTH EAST INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued Jan. 13, 1984.

Decided Feb. 27, 1984.

William J. Smith (orally), Van Buren, for plaintiff.

Jordan & Goodridge, Donald Goodridge (orally), Houlton, for defendant.

Before McKUSICK, C.J., NICHOLS, WATHEN, GLASSMAN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

McKUSICK, Chief Justice.

After a jury trial in Superior Court (Aroostook County) plaintiff Loretta St. Pierre recovered judgment on a homeowner's insurance policy issued by defendant North East Insurance Company. North East appeals to this court, asserting that the jury was not properly instructed on the issue of notice of cancellation of the insurance policy. Since we agree, we vacate the judgment of the Superior Court.

On February 9, 1977, Loretta St. Pierre and her husband, who is now deceased, contracted for a three-year homeowner's insurance policy from North East to cover a house they owned in St. Agatha. She and her husband paid the first of the three annual premiums. On February 21, 1978, after the second payment was due, North East attempted to cancel the policy for nonpayment. Mrs. St. Pierre later testified that she never received a notice of cancellation. On October 4, 1979, fire destroyed the St. Pierre house.

Mrs. St. Pierre brought an action in Superior Court against North East to recover on the homeowner's policy. Among the issues at trial was whether North East in fact mailed the notice of cancellation and whether Mrs. St. Pierre in fact received this notice. On the latter issue, the presiding justice instructed the jury:

> Now, if a mailing was consummated, you then have to decide whether or not that notice of cancellation was mailed and received by the named insured that is involved in this case. Did Mrs. St. Pierre receive this notice of cancellation, or didn't she? . . . [She has] a right to receive a notice of cancellation.

North East objected to this instruction before the jury retired, proposing instead that the jury be instructed that a mailing, even without actual receipt by the insured, was sufficient to cancel the insurance policy. The presiding justice denied North East's requested instruction.

By special verdict the jury found that the North East insurance policy on the St. Pierre house was in force on October 4, 1979, and that Mrs. St. Pierre had suffered $25,000 of loss in the fire occurring on that day. North East has taken a timely appeal from the judgment entered on that jury verdict.

North East's primary argument on appeal is that the presiding justice erroneously instructed the jury on the notice requirement for effective cancellation. North East argues that the insurance policy in question was cancelled by its mailing a notice to the

St. Pierres, whether or not they actually received the notice.

The insurance policy in question provided that it could be cancelled "by mailing or delivering to the insured written notice. . . . The mailing of notice as aforesaid shall be sufficient proof of notice." Mrs. St. Pierre essentially concedes that if the insurance policy is controlling on the issue of receipt, the instruction was erroneous. There is nothing in the insurance policy giving Mrs. St. Pierre an affirmative right of actual receipt of notice. The Colorado Supreme Court, examining a similar insurance policy, concluded:

The insurance contract here contains the so-called "standard form" cancellation clause. By its express terms it provides that mailing of notice shall be sufficient proof of notice. The terms of the contract, not being ambiguous, must be enforced as written and the Court cannot rewrite these terms. In the absence of a statute to the contrary, the validity of the "standard form" cancellation clause such as the one in consideration here has been upheld by the overwhelming weight of authority. (Citation omitted)

*Jorgensen v. St. Paul Fire & Marine Insurance Co.,* 158 Colo. 466, 470, 408 P.2d 66, 68 (1965).

If Mrs. St. Pierre had any right to an instruction that actual receipt was required, it must come from a provision of statutory law. The statute in effect at the time of North East's attempted cancellation, 24–A M.R.S.A. § 3050 (1974),[1] provided in pertinent part: [2]

No notice of cancellation of a policy shall be effective unless mailed or delivered by the insurer to the named insured at least 20 days prior to the effective date of cancellation, or, where the cancellation is for nonpayment of premium, at least 10 days prior to the date of cancellation. A post-office department certificate of mailing to the named insured at the address shown in the policy shall be proof of receipt of such mailing.

We begin our interpretation of this statute by looking to the plain meaning of the first sentence of section 3050. This sentence established two requirements for effective cancellation: a time period of advance notice before any cancellation could be effective and the means by which an insurance company might notify an insured of an impending cancellation. As to the latter requirement, the first sentence by its clear terms contemplated that notice could be

1. The first paragraph of this section was amended by P.L.1979, ch. 347, § 10, effective September 14, 1979, to provide that:

No notice of cancellation of a policy shall be effective unless received by the named insured at least 20 days prior to the effective date of cancellation, or, where the cancellation is for nonpayment of premium, at least 10 days prior to the date of cancellation. A post-office department certificate of mailing to the named insured at his last known address shall be conclusive proof of receipt on the 3rd calendar day after mailing.

*See* 24–A M.R.S.A. § 3050 (Supp.1983–1984). Even though the fire at the St. Pierre house occurred on October 4, 1979, i.e., subsequent to the effective date of the 1979 amendment to section 3050, the question of whether Mrs. St. Pierre then had subsisting insurance coverage depends on whether the acts of North East in February 1978 had succeeded in cancelling her three-year policy. That policy was or was not cancelled in February, 1978, depending upon the application of then existing law. *See Lang-*

*ley v. Home Indemnity Co.,* 272 A.2d 740 (Me. 1971).

2. 24–A M.R.S.A. § 3050 (1974) provided in full:

No notice of cancellation of a policy shall be effective unless mailed or delivered by the insurer to the named insured at least 20 days prior to the effective date of cancellation, or, where the cancellation is for nonpayment of premium, at least 10 days prior to the date of cancellation. A post-office department certificate of mailing to the named insured at the address shown in the policy shall be proof of receipt of such mailing. The reason shall accompany the notice of cancellation, together with notification of the right to a hearing before the superintendent within 15 days as provided herein.

When the reason does not accompany the notice of cancellation, the insurer shall, upon receipt of a timely request by the named insured, state in writing the reason for cancellation. A statement of reason shall be mailed or delivered to the named insured within 5 days after receipt of a request.

either mailed or delivered to the insured. Although the term "delivered" connotes actual receipt by the deliveree, no such meaning can be imputed to the term "mailed." Nearly a century ago, the Law Court held that, in its ordinary meaning, "mailed" means only that the sender has placed the item into the postal system. *See Casco National Bank v. Shaw,* 79 Me. 376, 380, 10 A. 67, 67 (1887); *see also Barrett v. Eastern Iowa Community College District,* 221 N.W.2d 781, 783 (Iowa 1974) (term "mailed" means placed in the mail). A letter or package has been mailed when it is turned over to the post office properly addressed and bearing the necessary postage. *See Cutting v. Harrington,* 104 Me. 96, 102, 71 A. 374, 377 (1908).

■ That first sentence of section 3050 contained the only explicit restriction on the means by which an insurer could give notice of cancellation to an insured. Other than the requirement of a timely mailing (or delivery), this sentence did not expressly specify what steps the insurance company must take to make certain that the insured was notified of cancellation. Unless some other provision of section 3050 explicitly imposed a requirement of actual receipt by the insured for effective cancellation, the parties were free to provide by contract that a mailing of the cancellation notice would suffice.

The second sentence of section 3050 providing that "[a] post-office department certificate of mailing ... shall be proof of receipt of such mailing" did not establish any positive requirement of actual receipt by the insured. It merely establishes a method of proving something, that something being "receipt of such mailing." It is true that, standing in isolation, "receipt of such mailing" could refer to either receipt by the post-office department or receipt by the addressee. In the context of section 3050 as it existed in February, 1978, however, "receipt of such mailing" can have only the first of the two possible meanings. Read in the context of the rest of section 3050, which required only mailing for the

notice of cancellation to be effective, the "receipt of such mailing" takes on a clear meaning from its evident purpose. The second sentence provided the insurer with an easy way to prove mailing; at trial the insurer could prove mailing merely by presenting the self-proving certificate of mailing. The second sentence relieves the insurer of presenting a live witness to testify to depositing the cancellation notice in the postal system.

■ We thus reject plaintiff's contention that section 3050 contained an implied requirement of receipt by the insured. If the legislature had any such intent, it could have easily expressed it, as the 1979 legislature did in amending that section to be effective September 14, 1979. *See* n. 1 above. It is also significant that section 3050 in its pre-1979 form, *see* n. 2 above, stated with perfect clarity the requirement of receipt for another purpose: "... the insurer shall, upon receipt of a timely request by the named insured ...." In conclusion, the presiding justice erred by instructing the jury that the North East insurance policy being sued upon was cancelled only if Mrs. St. Pierre had received the cancellation notice.

■ Unless the erroneous instruction was harmless, we must vacate the Superior Court judgment to permit a retrial with proper instructions. In the context of an erroneous evidentiary ruling in a civil case, we have held that:

> An exclusion of evidence, even if wrongful, will not suffice to cause a reversal unless the party against whom the ruling is made is aggrieved or prejudiced by it. Prejudicial injury occurs only if the evidence excluded was relevant and material to a crucial issue and if it can with reason be said that such evidence, if admitted, would probably have affected the result or had a controlling influence on a material aspect of the case.

*Towle v. Aube,* 310 A.2d 259, 264 (Me.1973). *See also* M.R.Civ.P. 61 (harmless error defined as "any error or defect in the proceeding which does not affect the substan-

tial rights of the parties"). In the case at bar, the refusal to give North East's requested instruction to the effect that a proper mailing with or without actual receipt was sufficient for cancellation was not harmless. Substantial evidence introduced at trial would support the jury in concluding that North East had mailed the notice of cancellation. Therefore, because the effectiveness of the attempted cancellation is a crucial issue, the erroneous instruction without much doubt "had a controlling influence on a material aspect of the case." *Towle v. Aube,* 310 A.2d at 264.

The entry is:

Judgment vacated.

Case remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.