730 P.2d 255

Jeffrey S. STUART, individually; Jonathan I. Stuart and Meryl A. Stuart, minors, by their father and next friend, Stuart Goldstein; Stuart Goldstein, individually; and Stuart Goldstein, as Personal Representative of the Estate of Myra S. Stuart, deceased, Plaintiffs-Appellants,

v.

INSURANCE COMPANY OF NORTH AMERICA, a foreign corporation, Defendant-Appellee.

No. 1 CA–CIV 7805.

Court of Appeals of Arizona, Division 1, Department D.

July 15, 1986.

Lim, Hurley & Stewart by Jerry Stewart, Phoenix, for plaintiffs-appellants.

Stuart Goldstein, in pro. per.

Gallagher & Kennedy by Mark A. Mahoney, Michael K. Kennedy, Phoenix, for defendant-appellee.

GRANT, Presiding Judge.

Appellants are the estate of Myra S. Stuart and her surviving husband and three children. Appellee is Insurance Company of North America (INA), which issued an automobile liability policy containing underinsured motorist coverage applicable to the decedent at her death. This appeal presents the question of whether the 1981 amendment to A.R.S. § 20–259.01 (Laws 1981, ch. 224, § 1) required INA to offer additional underinsured motorist coverage up to the amount of the policy's liability limits to decedent's husband as of the effective date of those amendments, which was approximately two weeks before the decedent's death. We answer that question in the negative, and accordingly affirm the judgment for INA.

The facts are not in dispute. The policy in question was in effect during the period from March 11, 1981 to September 11, 1981. It provided appellant Stuart Goldstein (decedent's surviving husband) and decedent with general liability coverage for bodily injury and property damage up to $500,000 and underinsured motorist coverage up to $100,000. On August 13, 1981, decedent was killed in an automobile collision with a driver whose general liability coverage limit was $15,000/$30,000. The driver's insurance carrier shortly there-

after paid appellants the full $15,000 policy limit.

On August 27, 1981, two weeks after decedent's death, appellant Stuart Goldstein mailed a check for $30.00 to INA with a letter requesting that his underinsured motorist coverage be increased to $500,000 effective for the period from July 27, 1981 through September 11, 1981. The letter asked INA to acknowledge and forward an endorsement to him for the increased coverage. INA cashed the check, but did not acknowledge Goldstein's letter or agree to his request. Instead, INA increased his underinsured motorist coverage limits to $500,000 effective September 11, 1981, the renewal date of the policy.

Appellants commenced this action on May 20, 1982. Count one sought a declaration that because INA had failed to offer appellants additional underinsured motorist coverage up to the $500,000 limit of their liability coverage, appellants had underinsured motorist coverage of $500,000 at decedent's death as a matter of law. Count two of the complaint stated a claim for bad faith and count three a claim for breach of contract.

After the complaint was filed, INA paid appellants $100,000 and appellants voluntarily dismissed count two pursuant to rule 41(a), Arizona Rules of Civil Procedure. INA thereafter moved for summary judgment on the remaining counts of the complaint. The trial court granted the motion and entered judgment for INA. This appeal followed.

Appellants contend that the 1981 amendment to A.R.S. § 20–259.01 required automobile liability insurers to offer each of their existing insureds underinsured motorist coverage with limits up to their policies' general liability coverage limits. Appellants do not present any significant analysis beyond the mere assertion that the amendment was intended to impose such a duty with respect to existing policies. Their thesis is apparently that the literal language of the amended statute requires that interpretation. INA argues in response that appellants' interpretation would constitute an improper retroactive application of the amendment and that the amended statute contains nothing to support the view that the legislature intended to require insurers to offer increased underinsured motorist coverage limits to *existing* policyholders. INA further argues that appellants' interpretation of the amended statute would render it unconstitutional as an impairment of the obligations of existing contracts in violation of Ariz. Const. art. II, § 25.

The cardinal rule of statutory construction is to ascertain the statute's meaning and the legislature's intent. *City of Phoenix v. Superior Court in and for Maricopa County,* 139 Ariz. 175, 677 P.2d 1283 (1984); *Mardian Construction Co. v. Superior Court,* 113 Ariz. 489, 557 P.2d 526 (1976). In doing so the courts will consider the context of the statute, the language used, its subject matter, its effects and consequences, and the spirit and purpose of the law. *Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 521 P.2d 1119, 62 A.L.R.3d 161 (1974). A statute may operate retroactively if it is merely procedural and does not affect an earlier established substantive right, *Bouldin v. Turek,* 125 Ariz. 77, 607 P.2d 954 (1979), but as a general rule a statute will be given prospective effect only, absent a plain indication of an intent that it operate retroactively. Courts are not controlled by the literal meaning of statutory language in pursuing the objective of giving effect to the legislature's intent. *State Bd. of Directors for Junior Colleges v. Nelson,* 105 Ariz. 119, 460 P.2d 13 (1969); *State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 667 P.2d 1304 (1983). Although A.R.S. § 20–259.01 is remedial and should be liberally construed to carry out the legislature's intent, *Evenchik v. State Farm Ins. Co.,* 139 Ariz. 453, 679 P.2d 99 (App.1984), not every construction denying coverage violates the purpose of the statute. *Love v. Farmers Ins. Group,* 121 Ariz. 71, 588 P.2d 364 (App.1978).

When construing legislation, a court must determine and give effect to

legislative intent behind the statute. *Kriz v. Buckeye Petroleum Co.*, 145 Ariz. 374, 377, 701 P.2d 1182, 1185 (1985). Where the words of the statute fail to reveal that intent, as is the case with this statute, and the legislative history does not shed light on the issue, a court must read the statute as a whole, considering its subject matter, effects, consequences, purpose, and spirit. *Id.* at 377, 701 P.2d at 1185. Further, the court should construe the statute so as to give it a fair and sensible meaning. *City of Phoenix v. Superior Court in and for Maricopa County*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984).

■ The legislative history of the statute before us is as follows. The legislature passed section 20–259.01 in 1965. This section provided for insurance coverage to include protection from negligent uninsured motor vehicle operators. It required insurers to make the insured aware of the availability of uninsured motorist coverage. The amount of the uninsured motorist coverage was set forth in A.R.S. § 28–1142. The insured had the option to reject this coverage. In 1970, section 20–259.01 was amended to include a definition of an uninsured motorist. In 1972, section 20–259.01 was further amended. This amendment designated the original pargaraph as subsection A and deleted the provision which required the uninsured motorist coverage to be called to the attention of the insured and which gave the insured the right to reject such coverage. This deletion made mandatory uninsured coverage for all insureds in the amounts set forth in A.R.S. § 28–1142. The amendment also added subsection B which gave insurers the option to make available to the insured additional uninsured motorist coverage. A.R.S. § 28–1142, part of the Safety Responsibility Act, required liability insurance for bodily injury or death to a limit of not less than $15,000 for one person and not less than $30,000 for any one accident.

The scheme embodied in the version of A.R.S. § 20–259.01 prior to the 1981 amendment is apparent from its text. Subsection A operated to prohibit insurers from delivering or issuing automobile liability policies which did not include uninsured motorist coverage of at least $15,000/$30,000. At the same time, subsection B required those insurers writing liability policies "as provided in subsection A" to make available additional uninsured motorist coverage of up to three times the minimum limits of A.R.S. § 28–1142, or $45,000/$90,000. Read together, pre-amendment subsections A and B did no more than prescribe certain specific coverage requirements that insurers had to meet in delivering or issuing new automobile liability policies.

Laws 1981, ch. 224, § 1 amended A.R.S. § 20–259.01 to provide in pertinent part as follows:

A. No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in the policy or supplemental to the policy, in limits for bodily injury or death *prescribed in subsections B and C of this section, but not less than the limits prescribed in § 28–1102,* under provisions filed with and approved by the insurance director, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured *and underinsured* motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. For the purposes of the coverage provided for pursuant to this section, "uninsured motor vehicles", subject to the terms and conditions of such coverage, includes any insured motor vehicle if the liability insurer of the vehicle is unable to make payment on the liability of its insured, within the limits of the coverage, because of insolvency.

B. Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder, *and by written notice offer the insured and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.*

C. *Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsurance [sic] motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.* (Emphasis added.)

Laws 1981, ch. 224, § 1 also added a new subsection E defining "underinsurance motorist coverage."

The 1981 amendment deleted the insurers' "option" of providing additional uninsured coverage and replaced it with a requirement that insurers offer additional uninsured coverage "by written notice." The 1981 amendment also, for the first time, required insurers to offer *underinsurance* coverage by written notice. (Subsection C)

Relying on the new language of subsection C requiring the insurer to "offer" underinsured motorist coverage up to the insured's policy limits for bodily injury liability "by written notice," appellants argue the 1981 amendment imposed on insurers a duty not merely to offer such expanded coverage when writing new liability policies, but also to offer to all of its existing policyholders the opportunity to purchase such coverage. We cannot agree. Viewed in the context of the language it is built upon, the 1981 amendment: (1) made underinsured motorist coverage mandatory to the same extent as uninsured motorist coverage; (2) required insurance companies delivering or issuing liability policies to include in them an offer of uninsured and underinsured motorist coverage up to the policy limits for bodily injury liability coverage as selected by the insured, while retaining the financial responsibility limits of Title 28 as the absolute minimum; and (3) imposed a new requirement that insurance companies offer the expanded limits in writing. As we have already noted, the pre-amendment text focused solely on the issuing and delivery of new automobile liability policies in Arizona. We do not view the 1981 amendment as expanding that focus.

However, in 1982, the legislature included the following sentence in the section on uninsured and underinsured coverage: "The offer need not be made in the event of reinstatement of a lapsed policy or the transfer, substitution, modification, or renewal of an existing policy." A.R.S. § 20-259.01(B) (1982 amendment). It also deleted a reference to subsection C contained in subsection A.

A cumulative reading of the statute and amendments suggests a legislative intent to maximize uninsured and underinsured motorist coverage. *See Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 697 P.2d 684 (1985). However, prior to the 1982 amendment there was no clear legislative direction as to whether the provisions were to apply only to new policies or to apply to pre-existing policies as well. The 1982 amendment does not clarify whether the 1981 amendment is retroactive or not. It is unclear whether the 1982 addition of "The offer need not be made in the event of the reinstatement of a lapsed policy or the transfer, substitution or renewal of an existing policy" meant

1. to clarify that while underinsured coverage must be offered to all existing policyholders, it need not be reoffered after every transaction;

2. to reinforce that the original intent of the 1981 amendment was to exclude existing insureds.

The first interpretation supports the conclusion that the 1981 amendment was intended to be retroactive, while the second interpretation supports the opposite conclusion. Therefore, the 1982 amendment is not dispositive in interpreting the 1981 amendment. However, the second interpretation seems more likely.

We believe that the amendment's language requiring insurers to "offer" their insureds increased underinsured motorist coverage "by written notice" rather than revealing a legislative intent to encompass existing policyholders, may be more reasonably explained as a legislative reaction to this court's holding in *McCloe v. Utah Home Fire Ins. Co.*, 121 Ariz. 402, 590 P.2d 941 (App.1978). In that case we held that the pre-amendment language requiring the insurer to "make additional uninsured motorist coverage available" did not impose "an affirmative obligation upon insurers to give their insureds actual personal knowlege of such an option." 121 Ariz. at 404, 590 P.2d at 943. Given the focus of the pre-amendment statute, discussed *supra,* we hold that the language in question was intended only to require insurers to offer their new automobile liability policy customers, affirmatively and in writing, uninsured and underinsured motorist coverage with limits up to those selected for bodily injury liability coverage. There is no indication the language was intended to impose the same requirement with respect to existing policyholders as well. As the Oklahoma appellate court stated in a like context in *McKinley v. Prudential Property & Casualty Insurance Co.,* 619 P.2d 1269, 1270 (Okla.App.1980): "The legislature would clearly have spoken in a more clear and definitive voice had they intended to adopt Appellant's position." (Citations omitted.)

Other jurisdictions have similarly interpreted analogous statutes. In *Porter v. Michigan Mutual Liability Co.,* 97 Mich. App. 281, 293 N.W.2d 799 (1980), the statute in question provided in pertinent part:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured.

293 N.W.2d at 801. The court declined to read this language to require insurers to make mid-term offers to existing policyholders. *See also French v. Insurance Co. of North America,* 591 S.W.2d 620 (Tex. Civ.App.1979) (statutory amendment extending uninsured motorist coverage to property damage as well as bodily injury held inapplicable to preexisting policies); *O'Banion v. Allstate Ins. Co.,* 347 So.2d 878 (La.App.1977) (statutory amendment expanding uninsured motorist coverage inapplicable to insurance policy issued before its effective date).

A 1985 Arizona case which dealt with the 1981 amendment to section 20–259.01 and with similar facts came close to answering the question before us, but did not. In *Cole v. State Farm Mutual Auto. Ins. Co.,* 145 Ariz. 578, 703 P.2d 522 (App.1985), Eva Barringer renewed her insurance policy with Farmers on July 13, 1981, subsequent to the 1981 amendment being signed into law, but prior to the effective date. Cole, a passenger in Barringer's car, sustained injuries in a 1982 accident. Her injuries exceeded liability limits of the insurance companies of both drivers. Farmers settled with Cole for $15,000 liability coverage and $15,000 underinsured coverage even though this was not yet written into the policy. Farmers believed that when the 1981 amendment passed all policy holders were *automatically* to have underinsured coverage as of the effective date of the statute. Cole then demanded $15,000 from her own insurer, State Farm, under her underinsured coverage. This demand was refused on the basis of an "other insurance" clause in her policy, which the court upheld. The court stated that subsection A to the 1981 amendment made it mandatory to provide underinsured coverage in the amount of the statutory minimum and sub-

section B made it mandatory to offer underinsured coverage in a sum not less than the limits of liability insurance contained in the policy. However, because Farmers paid Cole the underinsured coverage, and State Farm had an "other insurance" clause, the court did not address whether the underinsured coverage would have been provided by operation of law.

We have examined the decisions cited by appellants, and agree with INA that none addresses the application of amended statutory provision to preexisting insurance policies. Our own research has likewise revealed no support for appellants' interpretation of the language at issue.

■ The general rule seems to be that an insurance policy issued *prior* to the effective date of a statute requiring underinsured/uninsured insurance coverage will *not include* such coverage by operation of law. The only exception to this general rule is when an insurance policy is written before the effective date of the legislation, but does not go into effect until after that date. *Cole v. State Farm, supra; Stanton v. Public Employees Mutual Ins. Co.,* 39 Wash.App. 904, 697 P.2d 259 (1985); *Higgins v. MFA Mutual Ins. Co.,* 550 S.W.2d 811 (Mo.App.1977); *United States Fidelity and Guar. Co. v. Gough,* 289 So.2d 925 (Miss.1974). The trial court did not err in granting INA's motion for summary judgment as to count one of the complaint.

■ Appellant also contends the trial court erred in granting INA's motion for summary judgment on appellants' breach of contract claim in count three of the complaint. They contend that INA's acceptance and cashing of their $30.00 premium check for $500,000 underinsured motorist coverage after decedent's death, and its failure within a reasonable time to reject appellants' application for such coverage for a period including the date of the accident, bound it to issue such coverage and pay appellants' claim thereunder. In response, INA asserts that appellants abandoned that claim in the trial court and cannot now press it on appeal. We agree.

INA's motion for summary judgment argued that its acceptance of the $30.00 premium check did not result in the formation of the insurance contract which appellants requested, and supported their argument with citations to authority and the affidavit of a competent witness. Appellants' response to the motion for summary judgment failed to address that point, and exclusively discussed the effect of the 1981 amendments to A.R.S. § 20–259.01. Further, at oral argument on the motion for summary judgment, appellants' counsel acknowledged that appellants chose not to address INA's argument concerning count three of the complaint. The court stated in *W.J. Kroeger Co. v. Travelers Indem. Co.,* 112 Ariz. 285, 541 P.2d 385 (1975):

> If the moving party on a motion has made a prima facie showing that no genuine issue of material fact exists, the opponent of the motion has the burden to produce sufficient evidence that there is indeed an issue. *Dobson v. Grand Internat'l Brotherhood of Locomotive Engineers,* 101 Ariz. 501, 421 P.2d 520 (1966). Where the facts set forth in support of the motion are not controverted by the opposing party, they are presumed to be true. *Watts v. Hogan,* 111 Ariz. 536, 534 P.2d 741 (1975). The opposing party cannot fail to press his argument and defeat the motion by a simple contention that an issue of fact exists; he must show that evidence is available that would justify a trial. *Dobson v. Grand Internat'l Brotherhood of Locomotive Engineers, supra.*

112 Ariz. at 286, 541 P.2d at 386. A plaintiff may not rest on the allegations of his complaint, but instead must produce competent evidence which will justify a trial on the issue in question. *Pendleton v. Cilley,* 118 Ariz. 84, 574 P.2d 1303 (1978). We hold that appellants abandoned count three of their complaint in the trial court, and cannot now be heard to contend that the trial court erred in granting summary judgment against them on that count.

■ INA has requested an award of attorney's fees pursuant to A.R.S. § 12–

341.01(A). Clearly, INA is the "successful party" on appeal. However, the inquiry as to whether a party should receive a fee award does not end with this determination because the language of A.R.S. § 12–341.-01 is permissive. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985). We therefore consider the factors set forth in *Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 694 P.2d 1181 (1985). *Wagenseller* applies these factors to appellate courts. The appellants' claim presented this court with an issue of first impression regarding statutory interpretation. Their position was not unmeritorious. Resolution of the claim could not have been achieved without appellants pursuing the matter through the appeal process. An award of attorney's fees to INA would discourage insureds from seeking their rights under both contract and relevant statutes. We therefore deny INA's request for an award of attorney's fees.

The judgment is affirmed.

BROOKS and FROEB, JJ., concur.