**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Plaintiff,**

v.

**Edward ROBINOL and Victoria Robinol, individually and in their capacities as guardians ad litem of Eydie Robinol and Cheryl Ilarraza, Defendants.**

**Civ. No. 88–00146–VAC.**

United States District Court,
D. Hawaii.

Nov. 18, 1988.

---

Goodsill Anderson Quinn & Stifel, William McCorriston, Richard Miller, Honolulu, Hawaii, for plaintiff.

Cronin Fried Sekiya Kekina & Fairbanks, Keith K.H. Young, Honolulu, Hawaii, for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

EZRA, District Judge.

This is an action seeking declaratory relief pursuant to 28 U.S.C. § 2201. Jurisdiction is founded in this Court under diversity of citizenship: 28 U.S.C. § 1332. Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") asserts that it has no duty to pay underinsured motorist ("UIM") benefits to defendant Eydie Robinol ("Robinol") under two policies of automobile liability insurance written by State Farm.[1]

## I. FACTS

On March 23, 1986, Robinol was injured in a two-car accident while driving defendant Ilarraza's Tercel automobile. The accident was caused by the negligence of the other driver (not a party to this lawsuit) whose insurance policy carried $35,000 limits for bodily injury. Robinol's damages admittedly exceeded that coverage.

Following the accident, Robinol made a claim under the Tercel policy for UIM benefits contending that, effective January 1, 1986, Hawaii Rev.Stat. § 431–448(b) required all insurance carriers to "offer to each policyholder or applicant for a motor vehicle liability policy optional" UIM coverage.[2] State Farm responded to this law by offering UIM coverage to all new applicants for insurance on or after January 1, 1986. As to those customers with policies already in force on January 1, 1986, however, State Farm offered UIM coverage at the first renewal date *on or after* January 1, 1986.[3]

The Tercel policy was last renewed prior to the accident on October 26, 1985 and was due for semi-annual renewal on April 26, 1986, about one month *after* the accident. State Farm denied the claim contending it did not have an obligation under Hawaii Rev.Stat. § 431–448(b) to offer UIM coverage until the first renewal date after January 1, 1986.

---

**1.** Policy No. 257–856–A09–51E (the "Nova policy") was issued to defendants Edward Robinol, Victoria Robinol and Cheryl Ilarraza. Policy No. 0333–389–51C (the "Tercel policy") was issued to defendants Victoria Robinol and Cheryl Ilarraza. Plaintiff concedes that Eydie Robinol was a resident relative of these named insureds and therefore qualified as an "insured" under both policies on the date of the accident.

**2.** Hawaii Rev.Stat. § 431–448 was recodified as Hawaii Rev.Stat. § 431:10–213 by Act 347, 1987 Hawaii Sess.Laws, effective July 1, 1988. This recodification, however, is not relevant to this motion.

**3.** Robinol also made a claim for UIM benefits under the Nova policy which is the subject of Count I of plaintiff's complaint. However, this Motion for Partial Summary Judgment is directed only at Count II—the Tercel policy.

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT

State Farm files this Motion for Partial Summary Judgment pursuant to Fed.R.Civ. P. 56(c) contending that, as a matter of law, Hawaii Rev.Stat. § 431–448(b) was not intended to have retrospective application and, therefore, State Farm was not required to offer UIM coverage to current policyholders (those policies effective prior to January 1, 1986) until the first renewal date on or after January 1, 1986.

## III. SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The moving party has the initial burden of demonstrating the absence of any material fact. *Richards v. Neilsen Freight Lines*, 810 F.2d 898 (9th Cir.1987); *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626 (9th Cir.1987). Once the moving party carries this burden, in order to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (emphasis added).

## IV. DISCUSSION

The requirement of Hawaii Rev.Stat. § 431–448(b) to offer UIM coverage was added to the existing *un*insured motorist statute. In relevant part, it reads:

(b) Each insurer shall offer to each policyholder or applicant for a motor vehicle liability policy optional additional insurance coverage for loss resulting from bodily injury or death suffered by any person legally entitled to recover damages from owners or operators of underinsured motor vehicles.

*Id.* There is no dispute that the negligent driver's auto was "underinsured" as defined by subsection (c) of that statute.

State Farm takes the position that the statute did not require it to offer UIM as additional coverage on an already existing policy until that policy came up for renewal. There is no question that UIM was *not* offered on the Tercel policy until the April, 1986 renewal date, one month *after* the accident. The legal question to be answered here is whether the statute required State Farm to offer UIM *as of January 1, 1986* on policies of auto insurance already in effect prior to that date and not yet up for renewal, or, put in another way, did the legislation in question, Hawaii Rev.Stat. § 431–448(b), have retroactive effect on policies in force on its effective date?

Defendants raise several issues of fact they allege should preclude summary judgment pursuant to *Anderson, supra:*

1. Did the law require State Farm to offer UIM coverage on the Tercel policy prior to the date of the accident (March 23, 1986)?

2. Did State Farm intend to provide coverage in this situation?

3. Did State Farm have any policies or procedures to provide coverage in this situation?

4. Did State Farm have any internal provisions which would provide coverage in this situation? [4]

The defendants' first issue is the legal question to be answered herein. It is not an issue of fact as contemplated by Fed.R. Civ.P. 56(c) or *Anderson, supra.* As for issues two, three and four, State Farm has stipulated that the answer is "NO" in each case.[5]

Defendants further claim that this motion is not "ripe" in that additional discovery is needed to find out more about the internal policies and procedures of State Farm before these questions can be answered. Again, State Farm concedes that

4. Defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment at 4–5.

5. Plaintiff's Reply Memorandum to Defendant's (sic) Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment at 2.

it did not offer UIM coverage before the accident, that it *did not intend* to offer such coverage to the defendants before the accident, and that it had no policies or procedures which would have allowed the offering of coverage before the accident. Additional discovery will not change these "matters of fact" into material "issues of fact".

Finally, defendants assert that further discovery is needed to determine how State Farm treated the mandatory increase in bodily injury limits pursuant to Hawaii Rev.Stat. § 294–10 which also became effective January 1, 1986.[6] Defendants argue that if State Farm increased limits of existing policies without waiting for the renewal date because of this statute, it would therefore be obligated to offer UIM coverage on those policies without waiting for the renewal date. Hawaii Rev.Stat. § 294–10 requires that "... an insurance policy covering a motor vehicle *shall provide* ..." the increased limits.

No matter how State Farm treated "current" policyholders because of the requirements of Hawaii Rev.Stat. § 294–10, the basis for such treatment would be different than under Hawaii Rev.Stat. § 431–448(b) because of the distinction between the "shall provide" language of the bodily injury limits increase provision as opposed to the "shall offer" language of the UIM statute. One provides mandatory coverage while the other provides for a mandatory "offering" of *optional* coverage. This Court finds that State Farm's actions or intentions regarding the bodily injury limit increase requirement of Hawaii Rev.Stat. § 294–10, whatever they may have been, do not create a material issue of fact in this case.

Finding no material issues of fact which could "reasonably be resolved in favor of either party" (*Anderson v. Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. at 2511), this Court can proceed to the question of whether State Farm is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

This appears to be a case of first impression in Hawaii. Essentially, the defendants' argument is that UIM coverage should be implied as a matter of law into the Tercel policy as of January 1, 1986 no matter when the policy was issued or renewed. This is based on the defendant's argument that all courts should favor, whenever possible, the plight of the driver who is injured by the negligence of a third party. However, defendants provide no authority for the proposition that, when a statute requires an insurer to "offer" *optional* coverage, it necessarily follows that such an "offer" requires modification of the existing contracts of insurance between the parties.

The UIM portion of Hawaii Rev.Stat. § 431–448 does not specify "when" the offer of UIM coverage must be made. However, it is an amendment to the *un*insured motorist coverage statute [7] which requires that no policy "shall be delivered, issued for delivery, or renewed" without such coverage. Subsection (b) was then added to require the *offer* of UIM coverage without significant modification of any other part of the statute.[8] Because they are part of the same statute, it is appropriate to infer the legislature intended the same "delivered, issued for delivery, or renewed" language to apply to the UIM requirement. It

---

6. Act 181, 1985 Hawaii Sess.Laws, amended Hawaii Rev.Stat. § 294–10 to require increased per person bodily injury coverage limits by providing as follows:

    In order to be a no-fault policy, an insurance policy covering a motor vehicle shall provide ... (1) liability coverage of not less than $35,-000.00 for all damages arising out of accidental harm sustained by any one person....

7. Hawaii Rev.Stat. § 431–448(a) states, in part: No automobile liability or motor vehicle liability policy ... shall be delivered, issued for delivery, or renewed in this State, ... unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ... provided that the coverage required under this section shall not apply where any insured named in the policy shall reject the coverage in writing.

8. Subsection (c) to Hawaii Rev.Stat. § 431–448 defines "underinsured" and "uninsured" motor vehicles.

seems incongruous to suggest that a more stringent time limit would be intended for an "offer" of "optional" UIM coverage than for a mandatory inclusion of uninsured motorist coverage.

Further, by its terms, Hawaii Rev.Stat. § 431–448(b) is not retroactive: i.e., it does not require UIM coverage to relate back to the effective date of policies existing on January 1, 1986. Under Hawaii law, a statute has no retroactive operation "unless otherwise expressed or obviously intended". Hawaii Rev.Stat. § 1–3; *In re Christian*, 65 Hawaii 394, 398, 652 P.2d 1137 (1982). Here, there is no indication of such expression or intent. Retroactive operation should not be found unless there is "a clear legislative expression that such operation is intended." *Clark v. Cassidy*, 64 Hawaii 74, 77, 636 P.2d 1344 (1981).

This view is supported by cases from other jurisdictions. They provide this Court with assistance if not precedence. The Oklahoma Supreme Court, in *MFA Ins. Co. v. Hankins*, 610 P.2d 785 (1980), dealt with a post-accident amendment to an existing uninsured motorist statute to include UIM coverage. Holding that such an amendment affected the substantive rights of the parties to the insurance contract as opposed to being merely remedial or procedural, the statute was held *not* to be effective retroactively. The Missouri Court of Appeals drew the same substantive/procedural distinction for its ruling in *Dragna v. Auto Owner's Mut. Ins. Co.*, 687 S.W.2d 277 (Mo.App.1985). The Missouri uninsured motorist statute was amended after plaintiff's accident to exclude the requirements of identity or contact in order to recover. The Court stated that the effect of the amendment "was to create new rights; thus, it was not merely procedural or remedial as Dragna asserts." *Id.* at 279. The creation of UIM benefits in the instant case most certainly creates new rights rather than simply representing a procedural change to enforce an existing right.

In refusing to retroactively apply an amendment increasing statutory limits for uninsured motorist coverage, the Appeals Court of Illinois said, in *Coronado v. Fireman's Fund Ins. Co.*, 131 Ill.App.3d 450, 86 Ill.Dec. 669, 672, 475 N.E.2d 1048, 1051 (1985):

> [T]he inclusion of certain express language in the statute may present an exception to the general rule that statutes which are in force at the time a contract is issued are controlling throughout the term of the contract. Such an exception is present where a statute contains express language declaring an amendatory act to be retroactive. (Citations omitted.)

Finally, the Court in *Porter v. Michigan Mut. Liability Co.*, 97 Mich.App. 281, 293 N.W.2d 799, 801 (1980) refused to require retroactive application of a statute to current policyholders even though that statute *required* ("shall offer") the offering of alternate deductible rates. (The Michigan statute, M.C.L. § 500.3109a; M.S.A. § 24.13109(1) is set out in full in *Porter*, 293 N.W.2d at 801.)

Defendants look to the specific wording of the statute and its reference to "policyholder" in support of its position that the legislature *required* that the offer of UIM coverage occur as of the effective date of the statute. The defendants' view of the legislature's intent in drafting the word "policyholder" is misplaced.

In *Langley v. Home Indemnity Co.*, 272 A.2d 740 (Me.1971), the Langley's insurance policy was in effect from August 4, 1967 to August 4, 1968. Pursuant to State statute, as of January 1, 1968, all policies were required to include uninsured motorist coverage. In fact, the relevant statute required that policies "shall contain" that coverage. Langley was injured on June 3, 1968. Langley claimed that the statute, by its mandatory language, required Home Indemnity to include uninsured motorist coverage in his pre-existing policy or it should be included as a matter of law. Even though the statute *required* "any policy" to include such coverage, the court refused to require a mid-term modification as a matter of law. Even this statutory language, the court stated, does not establish

a legislative intent that [the amendment] commands that contracting parties who, prior to January 1, 1968, had negotiated and finally concluded their automobile liability insurance contract must, on or after January 1, 1968, reopen negotiations and arrive at a supplemental contract embodying some form of uninsured motorist coverage upon peril that should they fail so to act, the law automatically inserts such coverage into their previously completed insurance contract regardless of their actual intention.

*Id.* at 744. The reasoning in *Langley* is even more persuasive here since that statute *required* the inclusion of coverage whereas our statute merely requires an "offer" of *optional* coverage.

*Stuart v. Insurance Co. of North America*, 152 Ariz. 78, 730 P.2d 255 (App.1986) also involved similar facts. Stuart attempted to require his insurance company to increase his UIM coverage mid-term pursuant to a newly-enacted statute. That statute, like the statute in question here, required an "offer" of increased limits. After looking for the legislative intent behind this amendment to an existing *un* insured motorist statute (as was done in this case), the court concluded:

> [W]e hold that the language in question was intended only to require insurers to offer their *new* automobile liability policy customers, affirmatively and in writing, uninsured and underinsured motorist coverage with limits up to those selected for bodily injury liability coverage. There is no indication that language was intended to impose the same requirement with respect to existing policyholders as well.

*Id.* 730 P.2d at 260 (emphasis added).

The reasoning of these cases is persuasive. Without clear legislative direction and given the fact that this underinsured coverage is optional and within a statute *requiring* other coverage (uninsured motorist) only on policies "delivered, issued for delivery, or renewed", this Court does not find that UIM coverage should be written into the Tercel policy as a matter of law simply because an offer of UIM coverage

was not made until the first renewal date of the policy after the statute's effective date.

Therefore, State Farm was not required by Hawaii Rev.Stat. § 431–448(b) to offer underinsured motorist coverage on the Tercel policy, which policy was in force before January 1, 1986, until the first renewal date on or after January 1, 1986. On this issue, State Farm is entitled to judgment as a matter of law.

State Farm also argues that to require mid-term offers of UIM coverage would be a violation of the constitutional prohibition against requiring a change in the substantive portions of pre-existing contracts. Although this position may be tenable, State Farm points to no direct authority for this proposition, especially in light of the fact that an insurer can charge for the additional coverage. Further, not all policies would be affected because the policyholder may not wish to pay for the additional coverage even after it is offered. However, this Court does not reach this constitutional issue in light of the other grounds which form the basis for the granting of State Farm's motion as set forth above.

Plaintiff's Motion for Partial Summary Judgment as to Count II of its complaint is GRANTED.