OLIVIA K. MOLLENA, Plaintiff–Appellant, and **EDWARD SINGSON, JR.**, and **PAULETTE M. SINGSON**, Plaintiffs, v. **FIREMAN'S FUND INSURANCE COMPANY OF HAWAII, INC.**, a Hawaii corporation, Defendant–Appellee, and **HAWAIIAN INSURANCE AND GUARANTY COMPANY, LIMITED**, a Hawaii corporation, **UNITED PACIFIC RELIANCE INSURANCE COMPANIES**, a Washington corporation, and **LIBERTY MUTUAL INSURANCE COMPANY**, a Massachusetts corporation, Defendants

NO. 14648

(CIV. NO. 89–0026–01)

and

**PATSYANN H. COSTA**, Plaintiff–Appellant, v. **FIREMAN'S FUND INSURANCE COMPANY OF HAWAII, INC.**, a Hawaii corporation, Defendant–Appellee

NO. 14645

(CIV. NO. 90–0470–02)

AUGUST 21, 1991

PADGETT, ACTING C.J., HAYASHI, WAKATSUKI, AND MOON, JJ., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF LUM, C.J., RECUSED

OPINION OF THE COURT BY WAKATSUKI, J.

Plaintiffs–appellants, Olivia K. Mollena (Mollena) and Patsyann H. Costa (Costa), appeal from the trial court orders

entered June 22, 1990, and July 13, 1990, respectively, denying their cross motions for summary judgment which requested that underinsured motorist coverage be implied, as a matter of law, under their respective motor vehicle insurance policies, and the granting of defendant–appellee, Fireman's Fund Insurance Company of Hawaii, Inc.'s (Fireman's Fund), motions for summary judgment against Mollena and Costa. The two cases were consolidated for the purpose of this appeal. We vacate the judgment entered in favor of Fireman's Fund.

## I.

Mollena and Costa contend the trial court erred in denying their cross motions for summary judgment for several reasons: (1) the Fireman's Fund policyholder message is not a legally sufficient offer of optional underinsured motorist coverage under Hawaii Revised Statutes (HRS) § 431–448, and therefore, underinsured motorist coverage should be implied as a matter of law; (2) Fireman's Fund should have repeated this offer of underinsured motorist coverage each time it mailed renewal declarations to its insureds under HRS § 431–448; and (3) a genuine issue of material fact exists as to whether or not Costa and Mollena actually received the policyholder message. Costa also argues Fireman's Fund should have obtained her written rejection of underinsured coverage under HRS § 431–448.

## II.

On January 1, 1986, HRS § 431–448(b) and (c) became effective. HRS § 431–448, in its entirety, reads:

§431–448. **Automobile liability; coverage for damage by uninsured or underinsured motor vehicle.**

(a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, shall be delivered, issued for delivery, or renewed in this State, with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 287–7, under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom, provided that the *coverage required under this section shall not apply where any insured named in the policy shall reject the coverage in writing*. (Emphasis added.)

(b) Each insurer *shall offer* to each policyholder or applicant for a motor vehicle *liability policy optional additional insurance coverage* for loss resulting from bodily injury or death suffered by any person legally entitled *to recover damages from owners or operators of underinsured motor vehicles*. (Emphasis added.)

(c) The *term "underinsured motor vehicle,"* as used *in this section*, means a motor vehicle with respect to the ownership, maintenance, or use of which the sum of the limits of liability of all bodily injury liability insurance coverage applicable at the time of loss to which coverage afforded by such policy or policies applies is less than the liability for damages imposed by law. A motor vehicle *shall* also *be deemed uninsured within* the meaning of *this section* if, after the occurrence of a loss described in

this section, the owner or operator thereof is unknown. (Emphasis added.)

Pursuant to HRS § 431–448(b), Fireman's Fund sent a letter entitled, "Policyholder Message," informing its insureds of the new optional underinsured motorist coverage. The relevant parts are as follows:

TO ALL HAWAII AUTO POLICYHOLDERS

Dear Policyholder,

Effective January 1, 1986, the state of Hawaii requires higher minimum limits of financial responsibility for Bodily Injury Liability and Uninsured Motorists Coverage.

The new minimum is $35,000 per person. If your policy provided less than the minimum limit mentioned above, it has been renewed with the higher limit.

Effective January 1, 1986 we are also required to offer you the option to purchase Underinsured Motorists Coverage. Underinsured Motorists Coverage includes Uninsured Motorists Coverage and the limit of liability is $35,000. Listed below are the annual premiums to be charged should you select this new coverage option.

UNDERINSURED/UNINSURED
MOTORISTS COVERAGE
$35,000 LIMIT

| ANNUAL PREMIUM | GARAGING LOCATION |
|---|---|
| $61 | OAHU |
| $38 | MAUI |
| | (Lanai, Maui and Molokai) |
| $42 | KAUAI |
| $46 | HAWAII |

Above premiums include $8 for basic uninsured motorists coverage.

If you have any questions about your insurance or wish to purchase Underinsured/Uninsured Motorists Coverage, contact your Fireman's Fund agent or Broker.

During the six month period between December 5, 1985 and June 4, 1986, this policyholder message was mailed along with the policy renewal declarations that are sent every six months.

Fireman's Fund had been providing motor vehicle insurance for Mollena since October 12, 1980 and for Costa since September 17, 1984. Both Mollena and Costa allege they never received the policyholder message. Neither purchased underinsured motorist coverage. However, Fireman's Fund claims it mailed a policyholder message once to Mollena the week of February 17, 1986 and once to Costa on or about February 2, 1986.

Mollena and Costa were injured in separate motor vehicle accidents on October 22, 1987 and on October 31, 1986, respectively.[1] Both received bodily injury liability policy limits of $35,000 from the third party tortfeasors involved in their respective accidents. Both claimed underinsured motorist benefits from their insurer, Fireman's Fund. Fireman's Fund denied their claims on the basis that their policies did not provide underinsured motorist coverage.

Mollena and Costa filed separate declaratory judgment actions against Fireman's Fund requesting the trial court to find the policyholder message was not a legally sufficient offer, and therefore, underinsured motorist coverage be implied as a matter of law. Fireman's Fund moved for summary judgment in both cases. Mollena and Costa filed cross motions for summary judgment. The trial court granted summary judgment in favor of Fireman's Fund and denied Mollena's and Costa's cross motions for summary judgment.

---

[1] Fireman's Fund did not mail the policyholder message to Costa or Mollena with the renewals which were in effect at the time of their respective accidents.

III.

HRS § 431–448(b) requires that "[e]ach insurer *shall offer* to each policyholder" optional underinsured motorist coverage. (Emphasis added.) We interpret this language to mean the insurer must make a legally sufficient offer of underinsured motorist coverage under the four–part test which we endorse and which is set forth in *Hastings v. United Pacific Insurance Co.*, 318 N.W.2d 849 (Minn. 1982). *See also* (applying four–part test) *Cloninger v. National Gen. Ins. Co.*, 488 N.E.2d 548 (Ill. 1985); *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 354 S.E.2d 555 (S.C. 1987). Under the four–part test, an offer is legally sufficient when all of the following are met: (1) if made other than face–to–face, the notification process must be commercially reasonable; (2) the limits of optional coverage must be specified and not merely offered in general terms; (3) the insurer must intelligibly advise the insured of the nature–of the optional coverage; and (4) the insurer must apprise the insured that the optional coverage is available for a relatively modest increase in premium. *Hastings v. United Pac. Ins. Co.*, 318 N.W.2d 849 (Minn. 1982). Clearly, from the "shall offer" language of HRS § 431–448, the insurer has the burden of proving a legally sufficient offer was made. *Compare State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 354 S.E.2d 555, 556 (S.C. 1987). If the insurer cannot show that the four–part test has been met, then coverage is implied as a matter of law. *Id.*; *Kuchenmeister v. Illinois Farmers Ins. Co.*, 310 N.W.2d 86, 88 (Minn. 1981). *See Hastings v. United Pac. Ins. Co.*, 318 N.W.2d 849 (Minn. 1982).

In *Hastings v. United Pacific Insurance Co.*, 318 N.W.2d 849 (Minn. 1982), pursuant to a Minnesota statute requiring the insurer to "offer" underinsured motorist coverage, the insurer sent a letter and option form informing its insureds of this new optional coverage. The letter explained that additional optional coverages

and deductibles may be purchased if desired by completing the enclosed option form. The option form stated: "underinsured motorist coverage 'is offered as an option' with limits of $50,000 per person/$100,000 per occurrence or $100,000 per person/$300,000 per occurrence." *Id.* at 851. After applying its four–part test, the *Hastings* court found the materials did not constitute a legally sufficient offer. The mailings were a commercially reasonable method of notification under part one of the test. Part two of the test was also satisfied. However, they did not explain the nature of underinsured coverage as required under part three of the test. The court reasoned:

> [T]he technical language of insurance is not easily understood by many, if not most, purchasers of insurance. "Underinsured motorist coverage" is an example of language that may not convey a clear message to the uninitiated insured, who might well understand it to be supplemental coverage for the insured whose own liability coverage for bodily injury to others is inadequate. To an insured with ample bodily injury liability coverage, the listing of "underinsured motorist coverage" as an available option, without further explanation, does not constitute a meaningful offer sufficient to enable the insured to assess why the offer should be carefully considered.

*Id.* at 852. The court also held that part four of the test was not met because the mailings only stated coverage "may be purchased" without any reference to a modest increase in premium. *Id.* at 853.

Fireman's Fund argues that the *Hastings* four–part test is not applicable because the legislature did not intend HRS § 431–448 to be interpreted as requiring the insurer to make a legally valid offer. Fireman's Fund asserts insurers are only required to make underinsured motorist coverage available to insureds, but are not required to "offer" it to insureds. It bases this argument on the 1987 recodification (which was not intended to make any substantive

changes) of HRS § 431–448 as HRS § 431:10C–302 where the legislature replaced the phrase "shall offer" with the phrase "shall make available."

However, HRS § 431–448 was actually recodified as HRS § 431:10–213. *See* Sen. Conf. Comm. Rep. No. 215, in 1988 Senate Journal, at 675; Hse. Conf. Comm. Rep. No. 126–88, in 1988 House Journal, at 826. HRS § 431:10–213 retains the "shall offer" language of HRS § 431–448. Thus, the line of cases applying the four–part test are applicable.

## IV.

Here, the policyholder message clearly does not meet the four–part test for a legally sufficient offer. Under part one of the test, mailing the policyholder message with the renewal declarations was a commercially reasonable method of communicating with insureds about a business transaction. However, the three remaining parts of the test are not met.

Under part two of the test, the limits of coverage are not clearly specified. The language of the policyholder message which states "UNDERINSURED/UNINSURED MOTORISTS COVERAGE $35,000 LIMIT" misleadingly suggests there is a single $35,000 coverage to be split between the underinsured and uninsured motorist coverages.

Under part three of the test, the policyholder message lacks any definition or examples or description of the nature of underinsured motorist coverage. In the policyholder message, the phrase "Underinsured Motorists Coverage includes Uninsured Motorists Coverage" is very deceptive. As noted by Mollena and Costa, this court has already held that the legislature intended underinsured and uninsured motorist coverages to be "separate and distinct" in *National Union Fire Insurance Co. v. Ferreira*, 71 Haw. 341, 345, 790 P.2d 910, 913 (1990). Further, the phrase,

"Underinsured/Uninsured Motorists Coverage," as used in the policyholder message is ambiguous and confusing, especially because the terms, underinsured and uninsured, are so similar.

Under part four of the test, Fireman's Fund fails to clearly inform its insureds of the premium for the underinsured motorist coverage. It lists the annual premium for "underinsured/uninsured motorists coverage" at different garaging locations. At the bottom of that listing, it states the "[a]bove premiums include $8 basic uninsured motorists coverage." It can be argued that the $8 should be subtracted from the annual premium at different garaging locations to arrive at the premium for underinsured motorist coverage. However, it is not readily apparent, nor is it clearly explained to the insured.

Fireman's Fund argues any difficulty in understanding is resolved by its instruction in the policyholder message that the insured contact his/her Fireman's Fund agent or broker to answer any questions. The burden, however, is on the insurer to provide the insured with a legally sufficient offer that contains relevant and pertinent information, and a clause instructing the insured to obtain that information by contacting his insurer does not suffice. *See Overbey v. Illinois Farmers Ins. Co.*, 525 N.E.2d 1076, 1082 (Ill. App. 2d 1988).

We find that the policyholder message is not a legally sufficient offer. Therefore, the question of whether or not Mollena or Costa actually received the "policyholder message" is moot.

## V.

Costa argues that her written rejection of underinsured motorist coverage was required based on the language of HRS § 431–448 and its legislative history. We agree.

HRS § 431–448 is divided into three subsections: subsection (a) relates to uninsured motorist coverage, the offer of

coverage, and written rejection; and subsections (b) and (c) relate to underinsured motorist coverage. The phrase "under this section" and "as used in this section" in HRS § 431–448 (a) and (c), respectively, illustrate the fact that subsections (a) and (c) apply to the entire section (or statute), and not just within their respective subsections. As Costa notes, if the word "section" were replaced with "subsection," HRS § 431–448 would be meaningless. Further, the legislature carefully distinguished between the use of "section" and "subsection" in Act 181. As a part of Act 181, HRS § 431–448 was amended to add underinsured motorist coverage. *See* Act 181, §§ 1–8, 1985 Haw. Sess. Laws 309–313. We conclude, therefore, that HRS § 431–448(a) which requires written rejection of uninsured coverage also applies to offers of underinsured motorist coverage described in HRS § 431–448 (b) and (c).

We recognize that other language in HRS § 431–448(a) has been made applicable to HRS § 431–448(b). Specifically, in *State Farm Mutual Automobile Insurance Co. v. Robinol*, 699 F. Supp. 819 (D. Haw. 1988), the requirement under HRS § 431–448(a) that offers for coverage must be made when the policy "shall be delivered, issued for delivery, or renewed" was applied to HRS § 431–448(b). The *Robinol* court reasoned that since the underinsured provisions were made a part of the statute which contained offer of coverage provisions, the legislature intended that pre-existing language be applied to underinsured motorist coverage as well. *State Farm Mut. Auto. Ins. Co. v. Robinol*, 699 F. Supp. 819, 822 (D. Haw. 1988).

Likewise, HRS § 431–448(a) also contained the written rejection requirement when the underinsured motorist coverage provision under HRS § 431–448(b) and (c) was added. It is clear that HRS § 431–448(b) and (c) should be read in conjunction with HRS § 431–448(a).

The subsequent amendment of HRS § 431–448 illustrates that the legislature originally intended an offer of underinsured

motorist coverage to be rejected in writing. The recodification of HRS § 431–448 as HRS § 431:10–213 was followed by an amendment in 1988. The amendment specifically provided for written rejection of underinsured motorist coverage and included this new provision in HRS § 431:10C–301 relating to uninsured and underinsured motorist coverage. *See* Sen. Conf. Comm. Rep. No. 215, in 1988 Senate Journal, at 675; Hse. Conf. Comm. Rep. No. 126–88, in 1988 House Journal, at 826. The legislature stated the purpose of this amendment was "*clarifying* that written rejection of coverage against underinsured motor vehicles shall be applied in the same manner as is presently utilized for uninsured motor vehicles." (Emphasis added.) *Id.* It was concerned that insurers were not offering those coverages in accordance with Hawaii law, therefore, it clearly stated that the requirement of a written rejection provides "greater assurance" that the consumer is sufficiently informed of the offer of both coverages. Hse. Stand. Comm. Rep. No. 194, in 1965 House Journal, at 583. *See* Hse. Stand. Comm. Rep. No. 1150–88, in 1988 House Journal, at 1248. We agree that the rationale for the written rejection requirement is the same for both uninsured motorist coverage and underinsured motorist coverage.

## VI.

HRS § 431–448(a) in conjunction with HRS § 431–448(b) requires that an offer be made for underinsured motorist coverage under any policy "delivered, issued for delivery, or renewed." *State Farm Mut. Auto. Ins. Co. v. Robinol*, 699 F. Supp. 819 (D. Haw. 1988). Costa asserts this means every policy renewal notice must contain the offer based on the plain language of the statute. We agree.

Fireman's Fund argues that requiring repeat offers in every renewal is cost prohibitive and contrary to the legislative intent to

provide coverage at the lowest possible cost. That is, the increase in administrative costs will be transferred to the consumer. We find this argument unpersuasive.

We hold that Fireman's Fund not having met the four–part test as enunciated herein, Mollena and Costa are entitled, as a matter of law, to implied offers in the minimum amount required to be offered for uninsured motorist coverage as required under HRS § 287–7, § 294–10(a), and § 431–448, which in this case amounts to $35,000 each to Mollena and Costa.

The summary judgment in favor of Fireman's Fund is reversed and this case is remanded to the circuit court for entry of judgments in favor of Mollena and Costa not inconsistent with this opinion.

*William Copulos* (*Ian L. Mattoch* and *Henry R. Lobdell* on the brief) for Plaintiff–Appellant Olivia K. Mollena.

*Keith K. Hiraoka* of Roeca & Louie for Defendant–Appellee Fireman's Fund Insurance Company of Hawaii, Inc.

*Gerald Y. Sekiya, Bert S. Sakuda* and *Keith K. H. Young* on the brief of Cronin, Fried, Sekiya, Kekina and Fairbanks for Plaintiff–Appellant Patsyann H. Costa.