828 P.2d 1231

**In the Matter of the Appeal in MAR-ICOPA COUNTY, JUVENILE ACTION NO. JA 33794.**

**No. 1 CA–JUV 91–028.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 26, 1991.

Review Denied May 19, 1992.

Gary E. Robbins, Phoenix, for petitioners.

Friedl, Richter & Buri by Charles E. Buri, Phoenix, for Natural Father.

Gary A. Wieser, Phoenix, for child.

Grant Woods, Atty. Gen. by C. Eileen Bond, Asst. Atty. Gen., Phoenix, for Arizona Dept. of Economic Sec.

---

## OPINION

McGREGOR, Presiding Judge.

This appeal involves the relationship between Arizona's consent statute, which permits adoption without the consent of a natural parent under specified circumstances, and the termination statute, which defines the circumstances under which a court may sever the parent-child relationship. We conclude that, when a natural parent does not consent to adoption, the adoption cannot proceed unless the court terminates the parent's rights pursuant to the termination statute.

### I.

The facts relevant to our resolution of this appeal are not in dispute. On May 11, 1988, the Arizona Department of Economic Security (ADES) placed the juvenile in the home of John and Jane Doe (the foster parents). Following the placement, the juvenile's natural mother relinquished all her rights to the juvenile. ADES subsequently filed a severance petition seeking termination of the natural father's parental rights. After the trial court held a severance hearing, which the natural father did not attend, the court terminated the father's parental rights. The foster parents then filed a petition to adopt the juvenile. Prior to the adoption hearing, however, the natural father objected. The trial court found that the father had not received adequate notice of the severance hearing and, accordingly, set aside its termination order.

The foster parents subsequently filed an amended petition to adopt the juvenile and moved the trial court to waive the father's requirement of consent to the adoption pursuant to Ariz.Rev.Stat.Ann. (hereinafter A.R.S.) § 8–106.C. The natural father moved to dismiss the adoption petition, arguing that the petition was legally insufficient because it did not allege that grounds existed under the termination statute, A.R.S. § 8–533, sufficient to justify terminating the parent-child relationship.

The trial court granted the father's motion to dismiss, finding:

> Viewing the facts in the light most favorable to Petitioner, the Court concludes that the Petition for Adoption is legally insufficient. The father's parental rights have not been terminated. It is Petitioner's theory that the child can be adopted anyway under A.R.S. § 8–106(C) if adoption is in the youngster's best interests. Such an adoption would operate as a de facto termination of the father's rights based only on the child's best interests. In the Court's opinion, this is unconstitutional. *Maricopa County Juv. Action No. JS–500274*, 167 Ariz. 1, 804 P.2d 730 (1990). It is also contrary to the specific statutory method of termination of parental rights. A.R.S. § 8–531 et seq.

We agree and affirm the trial court's order.

### II.

When a court exercises its power to terminate parental rights, it deprives a parent of his fundamental constitutional right to the control and custody of his child. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (a parent has a right to the control and custody of his children); *Matter of Juvenile Action No. JS–500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990) ("[t]he important consideration [in a severance action] is that there are fundamental constitutional rights involved"); *Appeal in Pima County Juvenile Action No. J–46735 v. Howard*, 112 Ariz. 170, 540 P.2d 642 (1975). The combined effect of the fundamental character

of a parent's right to his child and the severity and permanence of termination dictates that the court sever the parent-child relationship only in the most extraordinary circumstances, when all other efforts to preserve the relationship have failed. *Matter of Juvenile Action No. 5666-J,* 133 Ariz. 157, 159, 650 P.2d 459, 461 (1982); *Department of Economic Security v. Mahoney,* 24 Ariz.App. 534, 537, 540 P.2d 153, 156 (1975).

Despite these fundamental concerns, termination of parental rights is necessary under appropriate circumstances. The legislature has provided a statutory method to terminate the parent-child relationship if specific conditions are satisfied. Section 8-533.A permits any person with "a legitimate interest in the welfare of a child" to file a petition "for the termination of the parent-child relationship." Section 8-533.B specifies those grounds that justify termination of the parent-child relationship as follows:

B. Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court may also consider the needs of the child:

1. That the parent has abandoned the child.

2. That the parent has neglected or wilfully abused the child.

3. That the parent is unable to discharge the parental responsibilities because of mental illness, mental deficiency or a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period.

4. That the parent is deprived of civil liberties due to the conviction of a felony if the felony of which such parent was convicted is of such nature as to prove the unfitness of such parent to have future custody and control of the child, or if the sentence of such parent is of such length that the child will be deprived of a normal home for a period of years.

5. That the parents have relinquished their rights to a child to an agency or have consented to the adoption.

6. That the child is being cared for in an out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency, that the agency responsible for the care of the child has made a diligent effort to provide appropriate remedial services and that either of the following circumstances exists:

(a) The child has been in an out-of-home placement for a cumulative total period of one year or longer pursuant to court order and the parent has substantially neglected or wilfully refused to remedy the circumstances which cause the child to be in an out-of-home placement.

(b) The child has been in an out-of-home placement for a cumulative total period of two years or longer pursuant to court order, the parent has been unable to remedy the circumstances which · cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

■ Section 8-533 permits termination of the parent-child relationship only if the trial court finds that at least one of those grounds enumerated in the statute applies. Other safeguards also apply. The court must consider the needs of the child and must find that termination is in the child's best interest. *JS-500274,* 167 Ariz. at 5, 7, 804 P.2d at 734, 736; A.R.S. § 8-533.B. Moreover, the trial court must find that *clear and convincing evidence* justifies termination of the parent-child relationship. *JS-500274,* 167 Ariz. at 4, 804 P.2d at 733. The combination of the heightened evidentiary showing, the limited statutory grounds that justify termination and the need to consider the child's best interests all serve to insure that "in light of the fundamental parental rights at stake," termination is proper under the circumstances. *Id.* at 5, 804 P.2d at 734.

The foster parents argue, however, that they can avoid the stringent requirements

of section 8–533 and accomplish termination of the father's parental rights by following a procedure impliedly prescribed in A.R.S. § 8–106, Arizona's consent to adoption statute. As a general rule, the trial court cannot permit adoption of a child unless both natural parents, if living, consent. A.R.S. § 8–106.A.1. In other circumstances, the child's guardian, the appropriate agency, or the child himself must consent. A.R.S. § 8–106.A.2, 3. Consent of the parents is not required, however, from a parent who has been declared incompetent; from a parent whose parental rights have been terminated; or from a parent who has previously consented to placing a child for adoption. A.R.S. § 8–106.A.1.(a), (b) and (c). The statute also includes a general waiver provision:

> The court may waive the requirement of the consent of any person required to give consent when after a hearing on actual notice to all persons adversely affected the court determines that the interests of the child will be promoted thereby. In such case, the court shall make written findings of all facts upon which its order is founded.

A.R.S. § 8–106.C.

The foster parents contend that the court can waive the requirement of the natural father's consent and terminate his parental rights pursuant to section 8–108.C if the court finds that the adoption is in the best interests of the child and that the parent is unfit or has neglected the child, or that the child is delinquent, incorrigible or dependent. The foster parents thus assert that section 8–106 provides grounds for terminating a natural parent's rights that are broader than and independent of the grounds defined in section 8–533. We disagree. In our opinion, permitting the court to terminate parental rights under section 8–106 would contravene the language of section 8–533 and frustrate the legislature's purpose in prescribing a specific procedure to terminate the parent-child relationship.

■ In examining these two statutes, our ultimate goal is to ascertain and effectuate the legislature's intent. *Stuart v. Ins. Co. of North America,* 152 Ariz. 78, 80, 730 P.2d 255, 257 (App.1986). We begin with the statutory language, which provides the most reliable evidence of legislative intent. *Walker v. City of Scottsdale,* 163 Ariz. 206, 209, 786 P.2d 1057, 1060 (App.1989).

■ The specific language of section 8–533 and judicial interpretation of that statute indicate that the legislature intended that section 8–533 alone define the bases for terminating a parent-child relationship. The legislature expressly limited the grounds that justify termination of the parent-child relationship by stating in section 8–533.B that "[e]vidence sufficient to justify the termination of the parent-child relationship shall include *any one of* the following [grounds]...." (Emphasis added.) Nothing in the statutory language suggests that the legislature intended that the grounds for termination set out in the statute be regarded as anything other than exclusive. Moreover, our supreme court has held that a parent's "constitutional rights can be overridden *only* by the combined elements of *statutorily defined improper behavior* by the parent and the child's best interests." *JS–500274,* 167 Ariz. at 5, 804 P.2d at 734 (emphasis added). Thus, the statute's mandatory language, reinforced by prior judicial interpretation, indicates that only those grounds specified in section 8–533.B justify termination.

■ Even if the language of the statute were not clear, other factors would lead us to conclude that the legislature intended to authorize severance of parental rights only upon compliance with section 8–533. Section 8–106.C does not specify which factors the trial court should consider in terminating parental rights. The grounds for termination under section 8–533.B, in contrast, are specific and well defined. Specific statutory provisions control over those that are general. *City of Phoenix v. Superior Court,* 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984). Thus, the specificity of the termination statute provides additional indication that the legislature intended that

those exclusive procedures govern the termination of parental rights.

The legislative history of section 8–106 also supports our conclusion. Prior to 1976, subsection C of section 8–106 began with the statement that, "[n]otwithstanding the provisions of § 8–533," the court could waive the consent requirement in adoption proceedings. In 1976, the legislature amended section 8–106 and deleted that introductory language. That change evidences the legislature's intent to mandate that adoptions without consent of the natural parents may not proceed absent compliance with the termination statute.

Finally, we believe that avoiding the hybrid approach suggested by the foster parents furthers the public policy reflected in and the careful balance maintained by section 8–533 between the natural parents' rights and the termination of those rights under appropriate circumstances. The termination statute and consent to adoption statutes differ in purpose and in focus. The inquiry under the consent to adoption statute focuses upon the child's best interests, while the termination statute focuses upon the parents' fundamental rights. The difference in focus is crucial: because of the interests at stake, although the best interests of a child "alone may not be sufficient to grant termination, they may be sufficient to deny termination." *JS–500274*, 167 Ariz. at 3, 804 P.2d at 732. A parent's right to control and custody of his child does not evaporate because the parent has not been a model parent. *Id.* at 4, 804 P.2d at 733. The focus in adoption proceedings upon the child's interests unduly jeopardizes those fundamental, constitutional rights that section 8–533.B protects.

For these reasons, we hold that the court may not terminate the parent-child relationship by implication by permitting adoption without consent in proceedings brought pursuant to section 8–106. Rather, the court may terminate the parent's rights in his child only upon compliance with the procedures and standards prescribed in section 8–533.

## III.

For the foregoing reasons, we affirm the trial court's order dismissing the adoption petition.

CLABORNE and TAYLOR, JJ., concur.